For the reasons assigned the judgment appealed from is affirmed.

112 So.2d 687

**STATE of Louisiana**

**v.**

**Frank KELLY and Isom Larry Curry.**

No. 44527.

June 1, 1959.

Lemuel C. Parker, John F. Ward, Jr., of Burton, Roberts & Ward, Baton Rouge, for appellants.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., J. St. Clair Favrot, Dist. Atty., Scallan E. Walsh, Asst. Dist. Atty., Baton Rouge, for appellee.

FOURNET, Chief Justice.

The defendants, Frank Kelly and Isom Larry Curry, having been tried on a bill of information charging them with violation of Article 89 of the Louisiana Criminal Code [1] " * * * in that they engaged in an unnatural carnal copulation with each other, they being of the same sex, * * *" but convicted of attempt to commit crime against nature, are appealing from their convictions and sentences thereunder,[2] relying for a reversal thereof on six bills of exceptions reserved during the proceedings in the court below.[3]

The first bill of exception was reserved when the trial judge allowed the prosecuting attorney to amend the bill of information so as to show that the genital organ of defendant Kelly was used in the act of unnatural copulation, whereas the bill of information, as originally drawn, charged that defendant Curry's genital organ was used.

■ There is no merit to this bill, since under the express provisions of R.S. 15:253 " * * * the court may at any time before, during or after the trial amend the indictment [or bill of information] in respect to any defect, imperfection or omission in form or substance or of any variance with the evidence * * *." The defendant's remedy was to move for a discharge of the jury and a reasonable continuance of the cause, if the amendment was made to the substance of the indictment or bill of information. In the instant case, counsel for defendants not only failed to avail themselves of this right, but—according to the per curiam of the trial judge—insisted on going to trial, thereby waiving their objection to the amendment. See, State v. Walker, 189 La. 241, 179 So. 302; State v. Johnson, 181 La. 1, 158 So. 570.

■ The next bill was reserved when the trial judge, upon objection of the prosecuting attorney, restricted the testimony of a character witness to show character only as to such moral qualities as have pertinence to the crime with which these defendants are charged; and the third bill was reserved when the trial judge instructed the jury to disregard all previous testimony as to defendant's character except as to those an-

---

1. La.R.S. 14:89. "Crime against nature is the unnatural carnal copulation by a human being with another of the same or opposite sex or with an animal. Emission is not necessary, and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.

   "Whoever commits the crime against nature shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both."

2. Each defendant was sentenced to serve one year at hard labor in the Louisiana State Penitentiary.

3. In addition to the six bills of exception, referred to above, defense counsel also excepted to the trial judge's action in overruling the motions for a new trial and in arrest of judgment.

swers relating to moral qualities pertinent to the crime charged.

While Article 480 of the Louisiana Code of Criminal Procedure declares that "evidence of the good character of accused is always admissible in his behalf, and must be considered in connection with and as a part of the whole testimony and due weight be given it, but it can not destroy conclusive evidence of guilt," it contains the further provision that "such evidence must be restricted to showing character as to such moral qualities as have pertinence to the crime with which he is charged." Clearly, therefore, the trial judge did not err in these rulings.

■ Bill of exception No. 4 was reserved when the trial judge allowed the witness Alvin Doyle, Jr., who had been placed on the stand by the defense to identify certain photographs he had taken at the scene of the alleged crime and to testify with reference thereto, to answer under cross-examination by the state, over defendants' objection, what instructions he had received in connection with the taking of these pictures, contending that "the pictures are the best evi-

dence of what they show" and that "any instructions or statements made to the witness in taking the pictures are completely irrelevant and immaterial."

This contention is untenable. As of necessity, the pictures, taken by the witness, a professional legal photographer, pursuant to instructions given to him by the defendants, and allegedly depicting the scene of the crime with reference to the location of the defendants' car and that of the deputies, are of little, if any, probative value in themselves and cannot be properly evaluated as evidence without this witness' testimony showing exactly what instructions he followed in taking them.

Bill No. 5 was taken to the trial judge's ruling refusing to strike the entire testimony of the state's two witnesses, McCormick and Anderson, after McCormick, having been called by the state in rebuttal, testified during the ensuing cross-examination that he had discussed the case with Anderson in violation of the court's ruling ordering the sequestration of the witnesses.

■ According to the per curiam of the trial judge,[4] disposing of this bill, there is

---

4. "At the time this Bill of Exception was taken, E. H. McCormick, Deputy Sheriff, was being cross-examined by the defense. He was testifying in rebuttal. It was the third day of the trial. Defense counsel had requested a sequestration of the witnesses after the jury had been sworn and before the taking of testimony on the first day of the trial. The Court ordered the witnesses sequestered. Aft-

er the order was given by the Court the sheriff took charge of the witnesses and removed them to the hall where they could not see or hear any of the proceedings taking place in court room. They were instructed that while they were sequestered there should be no communication between them and others or between them and any witness who shall have testified.

no evidence to suggest that the violation of the sequestration order had resulted in depriving the defendants of a fair trial, and counsel for the defense, although having been permitted to further cross-examine McCormick on this point, thus having had an opportunity to show whether defendants' rights had in fact been prejudiced, refrained from doing so. Under these circumstances and in view of the lower court's finding that "the assistant district attorney conducting the prosecution made a satisfactory showing to the Court that Deputy McCormick disobeyed the rule without his knowledge and without his connivance," we do not think that the trial judge abused the discretion

"This witness was asked by Mr. Burton, one of defense counsel, if he had discussed the case with anyone. He was next interrogated as to whether he had talked the case over with Deputy Anderson (another state witness). He admitted talking to Deputy Anderson about the case. He was next asked when did he last talk about this case with Deputy Anderson. His reply was: 'Well, we went through the details of the case yesterday morning.' Counsel next directed the attention of the witness to the time he and the other witness (Deputy Anderson) were sitting out in the hall under the rule of sequestration. He admitted that he and Deputy Sheriff Anderson did make a comment or two about the case. Next he was questioned about whether he had been instructed by the bailiff not to discuss the case. His answer was: 'Yes, but we didn't say what went on in this court room amongst ourselves.' Being pressed further he was asked this question: 'But you commented on the case?' His reply was: 'We made a comment or two.'

"At this point in the case counsel for the defendants moved that the entire testimony of this witness be stricken and that the jury be directed to disregard any testimony given by this witness. Defense counsel also moved that the testimony of Deputy Anderson be stricken and the jury be instructed to disregard said testimony. The Court announced that it would not permit Deputy Anderson to testify in rebuttal after Deputy McCormick admitted that he and Deputy

Anderson had made a comment or two about the case, and would not permit Deputy McCormick to testify further for the State in rebuttal. The Court did permit Deputy McCormick to be cross-examined by defendants' counsel as to the testimony which he had given as a State Witness in rebuttal.

"The Assistant District Attorney conducting the prosecution made a satisfactory showing to the Court that Deputy McCormick disobeyed the rule without his knowledge and without his connivance. I think my ruling under the circumstance was well within the provisions of LSA–R.S. 15:371. In fact, if either party was prejudiced by my ruling it was the State and not the defendants particularly, in view of the fact that I made my ruling in the presence of the jury.

"I feel certain that when Deputy McCormick made the statement: 'Well, we went through the details of the case yesterday morning,' he meant Monday morning, which was the day the trial began. The Assistant District Attorney handling the case informed the Court that it was on Monday morning, the first day of the trial, that he went over all the details of the case with the State's witnesses. On Monday the jury was selected and one defense witness (a character witness) was by consent permitted to testify out of turn. That was all the testimony adduced on Monday. Tuesday morning the Assistant District Attorney made his opening statement and placed the State's witnesses on the stand."

vested in him under Article 371 of the Code of Criminal Procedure.[5]

The next bill (No. 6) was taken to the action of the trial judge in overruling defendants' objection to the following statement made by the assistant district attorney in his closing argument: "You see the condition and the weeds along this area? At the time these photographs were taken on July 23, Mr. Doyle said that it would be impossible to see the light on the car after it had turned this curve. He tested it that night, the night of July 24 about 8:00 o'clock. Very probably he could not because of the weeds, but we have no testimony whatsoever as to whether those weeds were there on April 15 or not and it's very probable that looking right directly across this line, that Mr. McCormick could have seen the light on their automobile."

■ The trial judge, in his per curiam to this bill, informs us that "the State's two witnesses (the arresting officers) testified that on the night of the alleged crime they could see the lights of the car occupied by the accused after it had rounded a curve. Mr. Doyle, the defense witness, testified that he tested out this statement on the night of July 24 at about 8:00 o'clock. He placed a car around the curve at a point where the two accused told him their car was located at the time and then took a position where the deputies were approximately located when they claimed that they saw the lights of the car of the accused." Under these circumstances, we conclude, as did the trial judge, that this comment was neither improper nor prejudicial, but a reasonable inference drawn from the evidence introduced in the case, and as such permissible under the provisions of R.S. 15:382.[6]

The motion for a new trial, in addition to reiterating some of the alleged errors herein disposed of, is mainly based on the conten-

5. La.R.S. 15:371. "The judge may, at any stage of the trial, order the sequestration of the witnesses. As soon as such order shall have been given it shall be the duty of the sheriff to take charge of the witnesses and to remove them to a place where they shall not be able to see or hear any of the proceedings taking place in court. Nor shall there be, while they shall be sequestered, any communication between them and others or between them and any witness who shall have testified. Any disregard of these provisions by a witness shall disqualify him from testifying and shall subject him to punishment for contempt; provided, that the judge may in all cases, in his discretion, permit any witness to testify; *provided, fur-*

*ther, that the issuance of such order shall not deprive either party of the right of calling or examining as a witness one who shall not have obeyed the order of sequestration, when such party shall show that the witness remained in court or otherwise disobeyed the order without the knowledge and without the connivance of the party calling him.*" (Emphasis supplied.)

6. "Counsel have the right to draw from the evidence received, or from the failure to produce evidence shown to be in the possession of the opposite party, any conclusion which to them may seem fit, but counsel have no right to draw from such evidence or suppression of evidence an incorrect conclusion of law."

tion that the jury's verdict of attempt to commit crime against nature is not responsive to the charge of crime against nature, and that there is no evidence to sustain the conviction of attempt to commit crime against nature.

The generally accepted test to determine the responsiveness of a verdict (except for those crimes enumerated in R.S. 15:386) is whether the lesser offense is generic to and included in the definition of the offense charged. Arts. 386,[7] 405,[8] 406,[9] La.Code of Crim.Proc.; Art. 5,[10] La.Crim.Code. As the charged crime is not specifically listed in Article 386 of the Code of Criminal Pro-

cedure,[11] Article 27 of the Louisiana Criminal Code,[12] defining an attempt as "a separate but lesser grade of the intended crime," is applicable.

■■■■ Inasmuch as all the elements of the charged crime, i. e. crime against nature, with the exception of completion, being present in the attempt to commit such crime, the verdict of attempt to commit crime against nature was responsive to the charge. Whether or not the actions taken by the defendants amounted to a mere preparation to commit the crime against nature or constituted an overt act directed toward the ac-

---

7. R.S.15:386. "Whenever the indictment sets out an offense including other offenses of less magnitude or grade the judge shall charge the jury the law applicable to all offenses of which the accused could be found guilty under the indictment. * * *"

8. R.S. 15:405. "The verdict must be responsive to the indictment, that is to say, no one can be found guilty of an offense not charged in the indictment or not necessarily included in the offense charged; * * *"

9. R.S. 15:406. "When the crime charged includes another of lesser grade, a verdict of guilty of the lesser crime is responsive to the indictment, and it is of no moment that the greater offense is a felony and the lesser a misdemeanor."

10. R.S. 14:5. "An offender who commits an offense which includes all the elements of other lesser offenses, may be prosecuted for and convicted of either the greater offense or one of the lesser and included offenses. In such case, where the offender is prosecuted for the greater offense, he may be convicted of any one of the lesser and included offenses."

11. The case of State v. Butler, 230 La. 765, 89 So.2d 294, relied upon by coun-

sel for the defense and holding that a verdict of attempted manslaughter is not responsive to a charge of manslaughter, is inapposite, as the responsive verdicts for the crime of manslaughter are specifically listed in R.S. 15:386 and do not include a verdict of attempted manslaughter.

12. R.S. 14:27. "Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

"Mere preparation to commit a crime shall not be sufficient to constitute an attempt; * * *

"An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt * * *."

complishment of the crime was a question to be determined by the jury; State v. Carter, 213 La. 829, 35 So.2d 747. In the absence of a showing to the contrary, the presumption is that the jury was properly charged by the trial judge as to the law applicable to the case.

The motion in arrest of judgment incorporates all of the previous objections which have already been ruled upon and, therefore, presents nothing further to review.

For the reasons assigned, the convictions and sentences are affirmed.

HAWTHORNE, J., absent.

112 So.2d 692