432 So.2d 837 (1983)
STATE of Louisiana
v.
Gregory ARMSTEAD.
No. 82-KA-0896.
Supreme Court of Louisiana.
May 23, 1983.
*838 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John Craft, Brenda Brown, Asst. Dist. Attys., for plaintiff-appellee.
Walter Sentenn, Dwight Doskey, Orleans Indigent Defendern Program, New Orleans, for defendant-appellant.
DENNIS, Justice.
The defendant, Gregory Armstead, was convicted by a six member jury of making obscene phone calls, La.R.S. 14:285, and of possessing an unregistered shotgun with a barrel of less than eighteen inches. La.R.S. 40:1781, 1785, 1791. He was sentenced to consecutive terms of two and three years. On appeal, he raises three assignments of error. We affirm his convictions and sentences.
A woman receptionist for Litton Data Systems began receiving obscene phone calls on one of the twenty phone lines in the Litton switchboard in 1981. Despite her efforts to discourage the caller, he continued for several months. The state's evidence linking the defendant to these calls consisted of the receptionist's testimony that twice the caller had identified himself as "Greg", an in-court identification of his voice by her, telephone company records which showed that several of the calls had been traced to a number assigned to defendant's mother, and telephones bearing this number, seized at the house where defendant and his mother resided.
Evidence at the trial established that, during the execution of a search warrant at the defendant's home, the police seized a *839 shotgun with a barrel of less than eighteen inches. The gun was found in a vinyl guitar case in a closet in the defendant's room.[1] The shotgun was not registered with the custodian of the Firearms Registration Files of the State Police. Possession of such a short barreled shotgun is prohibited without registration. La.R.S. 40:1781, 1785 and 1791. Several of the police officers present during the execution of the warrant testified that when the gun was brought into the room where the defendant and his mother were waiting, Mrs. Armstead said that she had not seen the gun before. The defendant answered that the gun was his and that he had bought it on the street.
The defendant rested his case without calling any witnesses and argued that the telephone tracing equipment malfunctioned, that the shotgun had a barrel of greater than eighteen inches, and that the gun did not belong to him.

ASSIGNMENT NUMBER ONE
In this assignment of error, the defendant complains of the introduction of computer printouts, which indicated that the obscene phone calls originated from his mother's telephone. He argues that the state failed to lay the proper foundation for the printouts as an admissible business record. Particularly, the defendant complains that the person who was called to introduce the record was not the person responsible for making the record.
There is no doubt that computer printouts which reflect computer stored human statements are hearsay when introduced for the truth of the matter asserted in the statements. United States v. Ruffin, 575 F.2d 346, 356 (2d Cir.1978); Comment, Guidelines for the Admissibility of Evidence Generated by Computer for Purposes of Litigation, 15 U.C. Davis L.Rev. 951, 963 (1982); Note, Appropriate Foundation Requirements for Admitting Computer Printouts Into Evidence, 1977 Wash.U.L.Q. 59, 61, 63 (1977); J. Roberts, A Practitioner's Primer on Computer-Generated Evidence, 41 U.Chi.L.Rev. 254, 272 (1973). The output represents only the by-product of a machine operation which uses for its input "statements" entered into the machine by out of court declarants.[2]
From our understanding of the record, however, we are not dealing with computer stored human statements or assertions which have been retrieved from the computer and introduced into evidence in printout form. The invention of electronic switching systems in telecommunications has eliminated the need for manual involvement in a telephone trace. Since the computer is actually responsible for making the telephone connection, the computer can be programmed to record the source of any incoming call. Thus, the printout of a telephone trace in this type of system does not represent evidence of computer stored declarations. The computer generated data by recording the source of various telephone connections as it was making them. Therefore, the evidence in this case was generated solely by the electrical and mechanical operations of the computer and telephone equipment, and was not dependent upon the *840 observations and reporting of a human declarant.
We therefore view the printout offered as evidence in this case differently from printouts of human statements fed into the computer. Since the computer was programmed to record its activities when it made the telephone connections, the printout simply represents a self-generated record of its operations, much like a seismograph can produce a record of geophysical occurrences, a flight recorder can produce a record of physical conditions onboard an aircraft, and an electron microscope can produce a micrograph, which is a photograph of things too small to be viewed by the human eye.[3]
We pretermit consideration of defendant's contention that the printout in this case was not properly qualified as a business record, since we find that such a foundation was not required. The printout of the results of the computer's internal operations is not hearsay evidence. It does not represent the output of statements placed into the computer by out of court declarants. Nor can we say that this printout itself is a "statement" constituting hearsay evidence. The underlying rationale of the hearsay rule is that such statements are made without an oath and their truth cannot be tested by cross-examination. State v. Arnold, 367 So.2d 324 (La.1979); State v. Joya, 354 So.2d 543 (La.1978); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971), appeal dismissed, cert. denied, 404 U.S. 805, 92 S.Ct. 101, 30 L.Ed.2d 38; E. Cleary, McCormick on Evidence § 245 (2d Ed.1972); 5 Wigmore on Evidence § 1361 (Chadbourn Rev.1974). Of concern is the possibility that a witness may consciously or unconsciously misrepresent what the declarant told him or that the declarant may consciously or unconsciously misrepresent a fact or occurrence. State v. Arbuthnot, 367 So.2d 296 (La.1978). With a machine, however, there is no possibility of a conscious misrepresentation, and the possibility of inaccurate or misleading data only materializes if the machine is not functioning properly. For this reason, apparently, most definitions of hearsay are limited to out of court statements by a person made out of court and thus not under oath, and not subject of cross-examination or confrontation. State v. Perniciaro, 374 So.2d 1244 (La.1979); State v. Martin, 356 So.2d 1370 (La.1978); State v. Arnold, supra; State v. Sheppard, 350 So.2d 615 (La.1977); State v. Launey, 335 So.2d 435 (La.1976); State v. Nix, 327 So.2d 301 (La.1976), cert. denied 425 U.S. 954, 96 S.Ct. 1732, 48 L.Ed.2d 198; See Unif.R.Ev. 62(1) & 63; F.R.Ev. (R.D. 1971) 801(a) & (c).
We therefore view the computer generated data in this case as demonstrative evidence of a scientific test or experiment.[4] *841 See Reliability of Scientific DevicesTelephone Calling Line Identification, 2 Am. Jur. Proof of Facts 2d 545. See generally McCormick, supra, at §§ 202-211; Strong, Questions Affecting the Admissibility of Scientific Evidence, 1970 U.Ill.L.F. 1 (1970). The defendant's argument that the person who made the record should have been called is without merit since the computer itself made the record, not a person who could have been called to the stand.
One last note is in order. The defendant, in his objection to the introduction of the printout, only argued that Mr. Henry Arceneaux, security manager for South Central Bell, was not the proper person to introduce the evidence. He did not argue that a proper foundation had not been laid in terms of the accuracy and reliability of the computer trace. While we are certain that such a predicate would be required, we need not decide in this case the appropriate standard to be utilized in evaluating the sufficiency of evidence elicited in such a predicate since no contemporaneous objection on this ground was made.
Furthermore, we are satisfied from the testimony of Mr. Arceneaux, that the procedure performed by the telephone company computer demonstrated that the data was accurate and reliable enough to justify its admission. Mr. Arceneaux stated that the telephone trace is the same procedure utilized by the phone company to check "trouble" in any given phone line. It is an entirely different procedure than the one used to record telephone billing records. Independent verification of the accuracy of this trace was contained on the printout itself: As a method of identifying the unwanted calls, the receptionist dialed her own number after each harassing call was received and the printout accurately reflects this fact. It would be extremely difficult to alter or forge the computer's output, without such an action being apparent, and traces of this nature are now extensively used as a regular part of the telephone company's business. See State v. Hibbs, supra; Commonwealth v. Kurtz, supra.

ASSIGNMENT NUMBER TWO
In this assignment of error, the defendant complains of the trial judge's refusal to allow him to introduce or proffer testimony to prove that a state's witness violated a sequestration order issued by the judge. When the police officer who found the gun in the defendant's closet was called, the defense objected, arguing that he should not be allowed to testify because he had violated the sequestration order. The judge ordered that a predicate for the introduction of his testimony be established, and the prosecutor asked the officer if he was aware of the order, if he understood it, and if he had in fact violated it. The officer replied that he was aware of the fact that he was under sequestration, that he understood what that meant, and that he had not spoken to any of the other witnesses about the case. The defense, on traverse of the predicate, was unable to alter the officer's testimony, despite the defense's suggestion that several bystanders had seen the officer talking to other witnesses in the case. The trial judge ruled that the officer would be allowed to testify, and denied a request by the defense to call other witnesses, to proffer testimony, and for the declaration of a mistrial.
Louisiana Code of Criminal Procedure article 764 permits the sequestration of witnesses and prohibits sequestered witnesses from discussing the case "with anyone other than the District Attorney or defense counsel." The purpose of sequestration is to assure that a witness will testify from his or her own knowledge of the case without being influenced by the testimony of prior witnesses. State v. Parker, 421 So.2d 834 (La.1982); State v. Kimble, 407 So.2d 693 (La.1981).
Article 764, unlike its source (former R.S. 15:371), does not disqualify a witness for disobedience of its provisions. While a trial judge may in his discretion, refuse to allow a witness to testify after that witness has violated a sequestration order, State v. Boutte, 384 So.2d 773 (La.1980), such a disallowance is disfavored, since, without a *842 showing that the violation occurred with the consent, connivance, procurement or knowledge of the party for whom the witness testified or was to testify, exclusion would unfairly penalize one of the parties in the case and would inhibit the search for the truth. When the exclusion is of a defense witness, the matter takes on constitutional significance, as the defendant's right to compel the attendance of witnesses and to present his defense may be impaired. La. Const. art. 1, § 16; State v. Jones, 354 So.2d 530 (La.1978). As the United States Supreme Court observed in Holder v. United States:
If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified, and the weight of authority is that he cannot be excluded on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court.
150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893).
In this case, we cannot say that the trial judge abused his discretion in disallowing the defense the opportunity of calling witnesses to rebut the testimony of the officer that no violation had occurred. During the testimony on the predicate, the officer stated that he had not spoken to any other witnesses about the case. The mere fact that the defense or other persons might have seen the officer talking to other witnesses would not establish a violation of the order. It is clear that the judge was satisfied that no violation had occurred. Further, the defense made no argument or assertion to the trial judge, nor has he to this court, that the alleged violation was in any way attributable to the state. Lastly, the defendant has made no showing before us of possible prejudice. Except for the receptionist, the defense has failed to describe the other witnesses to whom the officer is alleged to have talked. There was no possibility of collusion between the officer and the receptionist, since her testimony related entirely to the obscene phone call charge, and the officer's related entirely to the possession of an unregistered firearm offense. As to a possible conversation with other officers who testified in the trial, one testified that he had not violated the order, and the other two were not questioned about the matter. All of the officers testified that a gun was found and that Armstead said it was his. The testimony of the officer who allegedly violated the sequestration order was identical to his testimony at a prior hearing on a motion to suppress. The defendant has not shown that the alleged violation was sufficient to affect the witness's testimony or to undermine the opposing party's ability to cross-examine. State v. Lewis, 367 So.2d 1155, 1158 (La. 1979).
Under these circumstances, and recognizing that exclusion of witnesses is disfavored, we find no abuse of discretion on the part of the trial judge. See State v. Sullivan, 352 So.2d 649 (La.1977); State v. Kelly, 237 La. 991, 112 So.2d 687 (1959). This assignment of error lacks merit.

ASSIGNMENT NUMBER THREE
The defendant was sentenced to two years at hard labor for making obscene phone calls, and three years at hard labor for possessing an unregistered shotgun with a barrel of less than eighteen inches. Since the trial judge did not explicitly state that the sentences were to be served concurrently, they are consecutive. Code of Crim. Proc. art. 883.
In this assignment, the defendant argues that the trial judge erred in not stating for the record why the sentences were to be consecutive, and that the sentences, when aggregated, are constitutionally excessive. He does not challenge either sentence individually.
Unless there are specific reasons for heavier punishment, concurrent sentences rather than consecutive sentences are appropriate for convictions arising out of a single course of criminal conduct, at least for a defendant with no prior criminal *843 record and in the absence of a showing that the public safety requires a longer sentence. State v. Molinario, 400 So.2d 596, 600 (La. 1981); State v. Underwood, 353 So.2d 1013, 1019 (La.1977). In the present case, however, the convictions do not arise out of the same act or transaction. Nor do they constitute part of a common scheme or plan. See Code of Crim.Proc. art. 883 and its official comments. While consecutive sentences for convictions arising out of different courses of criminal conduct may still be constitutionally excessive, the trial judge need not provide an articulation to rebut the presumption against consecutive sentences because there is no such presumption when the penalties do not arise from the same course of criminal activity. All that is required is that each individual sentence be supported by the Code of Criminal Procedure article 894.1 articulation or otherwise illumined by the record. Therefore, in the context of the present case, it is of no moment that the trial judge did not specifically address consecutiveness.
For each of defendant's convictions, he received a sentence within the statutory range. He does not contend that either sentence is excessive punishment for the crime to which it relates. The record reveals that this is not the defendant's first offense. He was previously convicted of possessing stolen things on a charge reduced from armed robbery. The defendant was also charged with simple burglary while he was a juvenile. We cannot say that the sentences aggregated are excessive.
This assignment of error lacks merit.

DECREE
For the reasons expressed in this opinion, the defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] The defendant unsuccessfully moved to suppress the weapon. He did not reurge the motion on appeal.
[2] In the case of computer stored data offered for evidence in a printout, however, we have recognized the need to adjust the rules of evidence regarding hearsay and business records to the realities of contemporary business life.

[P]rintout sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission.
State v. Hodgeson, 305 So.2d 421, 428 (La. 1974). Accord, United States v. Jones, 554 F.2d 251, 252 (5th Cir.1977), cert. denied, 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142; United States v. Verlin, 466 F.Supp. 155, 158 (N.D.Tex. 1979). See 7 A.L.R. 4th 8.
[3] The distinction between "computer stored data" and "computer generated data" has been recognized by most of the scholarly writings in the field, although the writers have not satisfactorily developed a consistent framework for evaluating computer generated data. See e.g., Comment, supra, at pp. 952-54 notes 9-11; D. Bronstein and D. Engelberg, A Preliminary Assessment of the Reception of Computer Evidence: Report of the Computer Evidence Survey Project, 21 Jurimetrics J. 329 (1981); M. Jenkins, Computer-Generated Evidence Specially Prepared for Use at Trial, 52 Chicago-Kent L.Rev. 600 (1976); J. Roberts, supra, at 255.
[4] We have found only three cases which dealt with the admissibility of computerized telephone traces. The leading case appears to be State v. Hibbs, 123 N.J.Super. 108, 301 A.2d 767 (N.J.App.1972), on remand, 123 N.J.Super. 152, 301 A.2d 789 (Cty.Ct.N.J.1972), affirmed 123 N.J.Super. 124, 301 A.2d 775 (N.J.App. 1973). The court apparently treated the printout as demonstrative evidence of a scientific test and found it admissible after a foundation of accuracy and reliability had been laid. But see State v. Vogt, 130 N.J.Super. 465, 327 A.2d 672 (1974), where an inadequate foundation was laid. In Commonwealth v. Kurtz, 49 Pa.D. & C.2d 538, 543 (Cty.Ct.Penn.1968), the court allowed the printout as an exception to the hearsay rule. In People v. Grignon, 37 Ill. App.3d 418, 346 N.E.2d 82 (1976) the court admitted the records upon a showing of trustworthiness established by testimony involving the manner in which a trace is made, the manner in which the records are prepared, and the manner of the preparation of the particular trace records involved in that case. But see People v. Gauer, 7 Ill.App.3d 512, 288 N.E.2d 24 (1972), where an inadequate foundation was laid.