437 So.2d 836 (1983)
STATE of Louisiana
v.
David M. WARREN.
No. 83-KA-0288.
Supreme Court of Louisiana.
September 2, 1983.
Rehearing Denied October 7, 1983.[*]
*837 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., W.C.D. Friederichsen, William C. Credo, III, Asst. Dist. Attys., for plaintiff-appellee.
Brich P. McDonough, McDonough & McDonough, New Orleans, for defendant-appellant.
BLANCHE, Justice.
David Warren was charged by bill of information with two counts of forgery in violation of La.R.S. 14:72. Following a trial by jury on March 2, 1982, he was found guilty as charged of both counts. Thereafter, the defendant was sentenced to serve five years imprisonment at hard labor on each count, said sentences to run concurrently. On appeal, defendant relies upon three assignments of error for reversal of his conviction and sentence.[1]
In the summer of 1981, Gumpert, a special investigator for the First Bank Card Center, began checking into reports of the use of stolen credit cards at Vicker's Oil Station in Jefferson Parish. The investigation initially focused on the employees of Vickers, including one Billy Huffman, a sixteen year old pump attendant. When questioned by Gumpert, Huffman admitted involvement in a scheme with two other men (defendant and a Donald Napoleon) whereby he would funnel them money from cash paying customers in return for credit slips written on stolen credit cards. Huffman, who knew neither of his confederates by name, agreed to cooperate in the investigation. He described to Gumpert two transactions with the defendant: one on August 10, 1981, and the other on August 15, 1981. On both occasions, the defendant reportedly arrived at Vicker's driving a yellow V.W. van and used the Visa card of a Gary Palmisano. Huffman furnished Gumpert with the license number of the van and Gumpert traced the vehicle to defendant. Police were then called into the investigation. Huffman identified defendant in a photographic line-up and a search warrant was obtained. On August 20, 1981, police executed the warrant. Seven stolen credit cards, including a Visa card belonging to Gary Palmisano, were recovered from a shaving kit in the defendant's bedroom.
At trial, the State's case for the August 10 and 15, 1981 forgeries rested largely on Huffman's testimony that he witnessed the defendant sign Palmisano's name to the credit slips. For his part, defendant denied any involvement in the forgeries. According to the defendant, he had found the credit cards after a basketball game with his brother, Robert, and had picked them up, intending to turn them in for a reward. Defendant argued that he could not have driven his van to the Vicker's station on the dates of the forgeries as he had abandoned the vehicle on the interstate on August 10, 1981, after it had "thrown a rod," and had not retrieved the vehicle until just moments before police executed the search warrant on August 20, 1981. Robert Warren, the defendant's brother, confirmed defendant's accounts of the discovery of the stolen credit cards and of the necessity of towing the disabled van home when the brothers retrieved it on August 20, 1981. However, Trooper Durel, one of the officers who executed the August 20 search warrant, testified *838 that the van arrived at defendant's residence under its own power and did not have to be towed as defendant claimed. The jury rejected defendant's alibi defense and convicted him of two counts of forgery.

ASSIGNMENT OF ERROR NO. 1
By this assignment, defendant contends that the trial court erred in denying his motion for a continuance.
During the presentation of its case in chief, defense counsel excused the jury and moved for a continuance for the purpose of producing the testimony of Donald Napoleon. According to Billy Huffman, it was Donald Napoleon who first approached Huffman and initiated the credit card scheme with him. Napoleon then introduced Huffman to the defendant who also became involved in the scheme. On the basis of information supplied by Huffman, Napoleon was arrested, convicted, and sentenced to serve time in parish prison.
In orally moving for a continuance, defense counsel explained that prior to trial he had determined that Napoleon was serving time in the Jefferson Parish Correctional Center on a sentence that would run beyond the trial date of defendant. Defense counsel felt certain that if it became necessary to call Napoleon to testify, all he had to do was ask the court to produce him. However, as counsel explained to the court, it was not until the date of defendant's trial that counsel learned that because of the application of good time, Napoleon had been released in January, 1981. Counsel requested the continuance in order to locate Napoleon and serve him with a subpoena. He explained that defendant was certain that once located, Napoleon would testify that he had never been in the Vicker's Station or met with Huffman and the defendant. The trial court denied counsel's motion without comment.
We note at the outset that the motion for a continuance should have been styled a motion for recess.[2] However, this misnomer does not prevent the court from examining the motion as though it had been properly denominated. State v. White, 389 So.2d 1300 (La.1980). A motion for recess is evaluated by the same standards as a motion for continuance. State v. White, 389 So.2d 1300 (La.1980); State v. Sharp, 321 So.2d 331 (La.1975). Therefore, to be entitled to a recess to secure the presence of a witness, the defendant must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
La.C.Cr.P. art. 709.
In the present case, defendant has failed to make the showing necessary to entitle him to a recess. In the first place, counsel can scarcely excuse his failure to anticipate Napoleon's good time credits or at least check with the prison authorities on the witness' actual release date. In addition, counsel had ample time after Napoleon's release to prepare for trial and determine the witness' whereabouts. Instead, counsel began trial, announcing to the court that he intended to call only one witness (defendant's brother), and did not even bother to call parish prison to check on Napoleon's whereabouts before the jury was selected. Under these circumstances, counsel's failure to subpoena the witness clearly indicated a lack of due diligence. State v. Atkins, 360 So.2d 1341 (La.1978).
Furthermore, counsel did not personally interview Napoleon, but relied solely on the assurances of defendant that the witness' testimony would be favorable. Counsel therefore could not, and did not, state to the court the "facts" to which the witness *839 was expected to testify with any degree of particularity.
Finally, counsel offered no assurances that he could locate and produce Napoleon in the future, or that the witness would testify with regard to the credit card scheme despite his Fifth Amendment protections.
The decision to grant a recess is placed in the discretion of the trial court. State v. Gordy, 380 So.2d 1347 (La.1980). A decision by the trial court will not be overturned absent an abuse of that discretion. State v. Gordy, 380 So.2d 1347 (La.1980); State v. Charles, 350 So.2d 595 (La.1977). In the instant case, counsel has failed to demonstrate the existence of any of the statutory grounds which would entitle him to a recess. Given this fact, we cannot conclude that the trial court abused its discretion in denying the motion for a continuance.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the defendant maintains that the trial court erred in disqualifying a witness on the grounds that he violated the court's sequestration order.
At the outset of defendant's trial, defense counsel asked for and obtained an order requiring sequestration of the witnesses. Later, during the presentation of its case in chief, defense counsel attempted to call William Jackson, the defendant's uncle, to testify. The State objected to Jackson's testifying on the grounds that the witness had been present in the courtroom during trial in violation of the court's sequestration order.
Defense counsel explained that Jackson had not been in the courtroom when the order of sequestration had been issued, that he had no knowledge that Jackson had ever been in the courtroom, and that, at any rate, he had not originally intended to call Jackson as a witness. According to counsel, he did not know that Jackson had relevant information about defendant's case until sometime during the course of trial when Jackson revealed that he had been present at defendant's residence when defendant and his brother, Robert, returned to that residence towing the defendant's disabled van. The defense argued that Jackson's testimony was important as it would corroborate the testimony of defendant and his brother and prove that the van had been broken down for several weeks, particularly during the time that Billy Huffman testified that the defendant drove the van into Vicker's Oil Station and used the credit card to obtain cash. The trial court sustained the State's objection and disqualified Jackson from testifying.
La.C.Cr.P. art. 764 provides the rule for the sequestration of witnesses:
Upon its own motion the court may, and upon the request of the state or the defendant the court shall, order that the witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
The purpose of sequestration is to assure that a witness will testify from his own knowledge of the case without being influenced by the testimony of prior witnesses, and to strengthen the role of cross-examination in developing the facts. State v. Armstead, 432 So.2d 837 (La.1983); State v. Kimble, 407 So.2d 693 (La.1981).
La.C.Cr.P. art. 764 vests discretion in the trial judge to disqualify a witness when a rule of sequestration has been violated. State v. Kimble, 407 So.2d 693 (La. 1981); State v. Boutte, 384 So.2d 773 (La. 1980). Ordinarily, the trial judge's ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. State v. Kimble, 407 So.2d 693 (La.1981); State v. Boutte, 384 So.2d 773 (La.1980). However, there are constitutional limitations on the trial judge's exercise of his discretion. State v. Boutte, 384 So.2d 773 (La.1980); State v. Jones, 354 So.2d 530 (La.1978). When the exclusion is of a defense witness, the defendant's right to compel the attendance *840 of witnesses and to present his defense may be impaired. La. Const. art. 1, § 16; State v. Armstead, 432 So.2d 837 (La.1983); State v. Jones, 354 So.2d 530 (La.1978). In State v. Jones, 354 So.2d 530, 532 (La.1978), this court recognized that:
Although our jurisprudence allowing trial judges to enforce sequestration pursuant to La.C.Cr.P. art. 764 by excluding testimony of disobedient witnesses does reflect a legitimate state interest in preventing testimonial influence that interest is not sufficient to override the defendant's rights to have compulsory process and to present a defense under either the federal or the state constitution.
We then followed Braswell v. Wainwright, 463 F.2d 1148 (5th Cir.1972) and held that exclusion of a witness' testimony, in the absence of a sequestration violation with the consent connivance, procurement or knowledge of the defendant or his counsel, is constitutionally impermissible. State v. Jones, 354 So.2d 530 (La.1978). See also, State v. Armstead, 432 So.2d 837 (La.1983); State v. Boutte, 384 So.2d 773 (La.1980).
In the instant case, the trial judge excluded the testimony of William Jackson because he had been present during the testimony of Trooper Durel. In oral argument, the defendant's attorney stated that he was not aware that Jackson had information relevant to his client's defense or that Jackson had been present in the courtroom during trial. There is nothing in the record to indicate that Jackson's presence was brought about with the consent, connivance, procurement or knowledge of the defendant or his counsel. Therefore, the trial court clearly erred in excluding the testimony of William Jackson.
However, not every erroneous exclusion of a disobeying witness' testimony is reversible error. If the testimony was not material and significant to a degree which would render its exclusion prejudicial to substantial rights of the accused, or which would constitute a substantial violation of a constitutional or statutory right, then the defendant has not been prejudiced by the court's ruling. State v. Boutte, 384 So.2d 773 (La.1980); State v. Jones, 354 So.2d 530 (La.1978).
In the present case, the defendant argues that Jackson's testimony is both material and significant as it corroborates the testimony of defendant and his brother that defendant's van had been broken down for several weeks, and casts doubt upon the credibility of Billy Huffman and Trooper Durel.
While Jackson's testimony may be relevant to the case, it is merely cumulative to the accounts given by defendant and his brother. Furthermore, it is testimony coming from a member of the family, not from an independent witness, who was present in the courtroom during the testimony of the very witness he was being called upon to contradict (Trooper Durel).
In view of the fact that Jackson had been present in the courtroom during trial and that his testimony was merely cumulative and corroborative proof of facts already testified to by a witness for the defendant, it does not appear that the trial judge committed reversible error in refusing to permit William Jackson to testimony.

DECREE
For the reasons assigned, the defendant's conviction and sentence are affirmed.
NOTES
[*] Dennis, J., would grant a rehearing.
[1] Assignment of error number three concerns the trial court's denial of defendant's motion for a new trial. Because that assignment simply reurges the arguments made in assignments numbers one and two, it will not be considered separately.
[2] A continuance is the postponement of a scheduled trial or hearing, and cannot be granted after the hearing is commenced. A recess, on the other hand, is a temporary adjournment of a trial or hearing after it has commenced. La.C.Cr.P. art. 708.