621 So.2d 83 (1993)
STATE of Louisiana, Appellee,
v.
Danny Edward SEARCY, Appellant.
No. 25108-KA.
Court of Appeal of Louisiana, Second Circuit.
June 23, 1993.
James E. Beal, Jonesboro, for appellant.
Richard P. Ieyoub, Atty. Gen., Walter E. May, Jr., Dist. Atty., Douglas L. Stokes, Jr., Asst. Dist. Atty., for appellee.
Before MARVIN, LINDSAY and STEWART, JJ.
STEWART, Judge.
Appellant, Danny Edward Searcy, was charged by bill of information with felony theft, in violation of LSA-R.S. 14:67. He was convicted as charged by a six-person jury. He now appeals, urging three assignments of error. We affirm.

FACTS
John North earned his living as a building contractor in Jackson Parish. The Hodge Bank held a mortgage on his mobile home, a vehicle and some acreage, and had taken initial steps toward foreclosing on the property. Notice of seizure had been served on North, and he moved out of the mobile home. About three days later, on Saturday, April 17, 1992, North returned to the trailer to finish moving, and found that most of what he had left was gone.
North called the sheriff's department and reported the theft. Deputy Ables came to the scene and made an inventory of the missing items, among which was a *84 fairly substantial amount of lumber that North had used in his construction business. Later that day as Mr. North was driving, he passed by Donnie Searcy's house and noticed some familiar lattice work in Searcy's yard. North could see that the lattice screened a pile of wood, which he thought must be his. He called Deputy Ables and reported this fact.
The deputy went to the Searcy residence and saw the lumber as North had described it. After questioning Mrs. Glenda Searcy, Ables drove across the highway to the residence of Danny Searcy, Donnie's brother and the defendant in this case. As he pulled in the driveway, Ables saw a large assortment of lumber. There was a similar amount of the lumber inside a shed beside the driveway. North came and identified the lumber as his own, and he and his friend Tommy Johns loaded the lumber and took it away.
Danny Searcy was arrested for theft of the lumber. He admitted that he had taken the lumber from the North property but said that, because his father, Edward Searcy, had been told by Jessie McKaskle, a collection officer with the Hodge Bank, "that it was okay for them to go out to that property and get lumber or whatever they wanted ...", he understood that it was all right to take the lumber.
Searcy was charged by bill of information with felony theft of the lumber. At trial, much testimony was taken on the issue of whether Searcy thought he had permission to take the lumber, or whether the defendant thought the lumber was abandoned property. Edward Searcy, the defendant's father, and Ralph McKaskle, were principals in this debate. McKaskle testified that he had asked if Searcy might be interested in some junk vehicles on the North property. McKaskle told him there was some lumber on the premises and some boats, motors and lawn mowers. McKaskle insisted that he told Searcy that "we couldn't do anything until we had seized the property and then send [the Norths] a 10-day letter saying that they had 10 days to get what they wanted off of the property." He denied that he had given Searcy permission to take anything from the property, and said that he told Searcy that the Norths would have the first opportunity to remove any property on the premises.
Edward Searcy testified that McKaskle came by his house and said that the Hodge Bank had foreclosed on the North property and wanted to know what Searcy would give for the old vehicles. According to Edward Searcy, McKaskle said he had talked to North that morning, and that North had gotten everything he wanted from the place. Edward Searcy went to look at the cars and, when McKaskle called him back, he offered $10 apiece for the cars. Edward Searcy said that "I just assumed I told them boys about it they just probably went down there and got it. I don't know." When asked if McKaskle had specifically told him to get the lumber, Searcy replied, "... he just insinuated if youI didn't tell nobody, you know, just to get nothing but I just assumed if you wanted to build a shed or something you could go get it." He testified that McKaskle had said that he had seen people hauling lumber off the place, and that he wanted to have some of it himself.
On cross-examination, Edward Searcy admitted that he had just assumed the Hodge Bank owned the property, but that McKaskle had never actually said that they did. He said that he did not remember discussing whether the Norths had to be given 10 days notice. He reiterated that McKaskle had told him that North had "quit the place". After some prodding, he admitted telling Deputy Ables, on the night of Danny's arrest, that McKaskle had not given him permission to take the lumber. He admitted that he did not have permission to go get anything, and finally admitted that he did not have the right to do anything.
In the state's rebuttal, Deputy Ables testified that when he asked Edward Searcy if McKaskle had given permission to take the lumber, Searcy had replied, "Never." McKaskle said that he did not recall talking to North about the property, and that he did not remember ever telling Searcy that North had abandoned the place.
*85 The jury found the defendant, Danny Searcy, guilty as charged. He now appeals. Among his assignments of error is that the trial court erred in excluding the testimony of defense witness Jackie Searcy. Finding no reversible error, we affirm the conviction.

DISCUSSION
Defendant assigns the following three assignments of error: (1) the trial court erred in accepting the victim of this offense as an expert witness; (2) the trial court erred in allowing use of a plea of nolo contendre to impeach the credibility of defense witness Edward Searcy; and (3) the trial court erred in excluding the testimony of defense witness Jackie Searcy.
With regard to his second assignment of error, defendant concedes the following in brief: "[t]his assignment has no merit and will, therefore, not be briefed." Because this assignment was neither briefed nor argued, we do not consider it on appeal. See State v. Schwartz, 354 So.2d 1332 (La. 1978); URCA Rule 2-12.4.
Assignment No. 1: Defendant asserts that the trial court erred in accepting John North, the victim of the theft, as an expert in the field of building and construction materials. He argues that, if North had not been qualified as an expert, the jury might have assigned little weight to his testimony and might have determined that the lumber was junk which was worth less than $100. Defendant complains that it was not necessary to qualify North as an expert in order to elicit his testimony about the value of the lumber.
The Louisiana Code of Evidence provides as follows:
Art. 702. Testimony by experts
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
Rather than preclude expert testimony if the matter in issue is within the knowledge of ordinary citizens, this article permits the expert to testify as to such matters if the court concludes that his testimony would be helpful to the trier of fact. Comment (c), LSA-C.E. Art. 702.
The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert, his competency must have been established to the satisfaction of the court, ...
State v. Sherer, 411 So.2d 1050 (La.1982). The competence of an expert is a question of fact to be determined within the sound discretion of the trial judge, and his rulings on the qualifications of experts will not be disturbed in the absence of manifest error, that is, unless they are clearly wrong. State v. Sherer, supra; State v. Honeyman, 565 So.2d 961 (La.App. 2d Cir.1990).
North testified that he had been in the construction business for 12 years, and that during that time he had bid approximately 200 jobs. He testified that he had priced lumber on a weekly basis for 12 years, and that he was familiar with the price of lumber on the date of the theft. The state tendered North as an expert in the field of building contracting. Defendant objected that, as a party in interest (the victim), North cannot be qualified as an expert. The trial court overruled the objection and accepted North as an expert. North testified that, after he had recovered his lumber, he sold it to his friend Tommy Johns for $300.
The defendant does not complain that North lacked sufficient qualifications to testify as an expert. Instead, he asserts that North's testimony about value was improper because North was not an impartial and unbiased witness. Defendant cites, and we have found, no statutory or jurisprudential authority to support a per se prohibition against the testimony of a crime victim as an expert in the trial of the crime in which he was victimized.
The defendant correctly argues that "it was not necessary to qualify the complainant *86 as an expert in order to have him testify as to the value of the lumber." However, the test for whether a witness is competent to testify as an expert is one of knowledge about the subject, not necessity for expert qualification. North testified that he sold the lumber to his friend for $300. This was not opinion testimony, but simple factual testimony. On these facts, we find no abuse of the trial court's wide discretion in its acceptance of North as an expert. See and compare, State v. King, 355 So.2d 1305 (La.1978) and State v. Foster, 510 So.2d 717 (La.App. 1st Cir.1987), vacated in part on other grounds, 519 So.2d 138 (La.1987).
This assignment is without merit.
Assignment No. 3: Searcy complains that the trial court erred in refusing to allow the testimony of Jackie Searcy.
The court asked the parties to announce their witnesses prior to voir dire. Defense counsel announced several witnesses who were then sworn, placed under the rule of sequestration, and ushered out of the courtroom. Jackie Searcy was present but was not announced or sequestered. She remained in the courtroom until shortly after the state questioned the first venire.
During the defense case in chief, defendant called Jackie Searcy. Outside the presence of the jury, the prosecutor objected on the ground that defense counsel had not named Mrs. Searcy as a witness when called upon to announce its witnesses.
Defense counsel stipulated that Mrs. Searcy was present during voir dire, and the court sustained the objection. The defense responded as follows:
Your honor, we would object to the ruling of the Court and we would point out to the Court that the witness was not present during any testimony and voir dire is not evidence and she did notshe was not exposed to any evidence of either the State or the defendant and that's the purpose of the rule of sequestration to keep the witnesses from hearing other evidence.

BY THE COURT: I understand that Mr. Beal. You were the party that elected to have them out at the start of the voir dire and it's only fair for the State's witnesses, it's fair for your witnesses. I have sustained the objection. Step out, Mrs. Searcy, bring the jury back in.
In his brief to this court, the defendant argues that Mrs. Searcy
did not hear any testimony or evidence of either the State or the defense, and only heard the State's initial questions to the prospective jurors during jury selection....
. . . .
... She was simply overlooked until shortly after the other witnesses had been sequestered and removed from the courtroom.
In his brief, defendant asserts that she was present at the conversation between McKaskle and Edward Searcy. He argues that he was prejudiced because Mrs. Searcy could have testified to the fact that McKaskle gave what appeared to be permission to take the lumber, and thereby could have "shed considerable light on the confusion and the lack of criminal intent which existed."
The record does not indicate, by proffer, argument, or otherwise, what is or was the expected testimony of this witness.
Article 615 of the Evidence Code provides the following:
A. As a matter of right; exceptions. On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case....
B. Violation of exclusion order. A court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness.
The purpose of sequestration is to assure that a witness will testify from his own knowledge of the case without being influenced by the testimony of prior witnesses, *87 and to strengthen the role of cross-examination in developing the facts. State v. Armstead, 432 So.2d 837 (La.1983); State v. Kimble, 407 So.2d 693 (La.1981); State v. Jackson, 452 So.2d 1225 (La.App. 2d Cir.1984).
The statute notwithstanding, there are constitutional limitations on the trial judge's exercise of his discretion to disqualify witnesses from testifying. The Sixth Amendment to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantees an accused the right to compel the attendance of witnesses and to present a defense. In State v. Jones, 354 So.2d 530 (La.1978), the Louisiana Supreme Court stated that, although the state has an interest in preventing testimonial influence,
[T]hat interest is not sufficient to override the defendant's rights to have compulsory process and to present a defense under either the federal or the state constitution. This is not to imply that there may be no risk of a witness coloring his testimony to conform to what has gone before. But our adversary system reposes judgment of the credibility of all witnesses in the jury. Excluding the witness's testimony, in the absence of a sequestration violation with the consent or knowledge of the defendant or his counsel, is not a constitutionally permissible means of insuring reliable testimony. Cf. Brooks v. Tennessee, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972).
When there is nothing in the record to indicate that the presence of the witness was brought about with the consent, connivance, procurement or knowledge of the defendant or his counsel, the testimony of the witness should not be excluded. See State v. Warren, 437 So.2d 836 (La.1983); State v. Jones, supra.
However, not every erroneous exclusion of testimony will amount to prejudicial error.
If the testimony was not material and significant to a degree which would render its exclusion prejudicial to substantial rights of the accused, or which would constitute a substantial violation of a constitutional or statutory right, then the defendant has not been prejudiced by the court's ruling. [citations omitted].
State v. Warren, supra. When the state effectively has only one witness against the defendant, and the excluded testimony would have reflected on the credibility of that witness, an erroneous exclusion of the testimony is prejudicial. See State v. Shoemaker, 500 So.2d 385 (La.1986). If a witness was in a position to offer testimony that might have substantially helped the particular defense asserted by the defendant, an erroneous exclusion of the offered testimony may be prejudicial. See and compare, State v. Shoemaker, supra.
In the instant case, it is not clear that the purpose of the rule of sequestration was even implicated. Mrs. Searcy was only present during the state's voir dire of the first jury panel, and heard no testimony in the actual trial of the case. It is difficult to imagine how the purpose of the rule is served in this instance. Furthermore, the defendant urges, and the state concedes, that the violation of the sequestration order was inadvertent. There is no evidence in the record that the violation was with the "consent, connivance, procurement or knowledge of the defendant or his counsel." Accordingly, the trial court ruling which excluded the witness from testifying was constitutionally impermissible.
However, the Louisiana Code of Evidence provides, in pertinent part, the following (emphasis added):
Art. 103. Rulings on Evidence
A. Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . . .
(2) Ruling excluding evidence. When the ruling is one excluding evidence, the substance of the evidence was made known to the court by counsel.
Defense counsel did not attempt to preserve the excluded testimony for appeal by attempting to proffer the evidence as provided by LSA-C.E. Art. 103.

*88 [I]n criminal cases, as well as civil cases, a party has a legal right, when evidence has been excluded, to make an offer of proof of what counsel expects to prove, outside the presence of the jury.
State v. Adams, 537 So.2d 1262, 1265, writ granted, 543 So.2d 2, affirmed in part, reversed in part, 550 So.2d 595.
The defense presented to the jury was that defendant had permission or was authorized to remove the lumber and/or that he did not have the requisite intent to steal because he believed he had permission to take the lumber. The record does not reflect whether Jackie Searcy was in a position to offer testimony which might have substantially helped the defense. Absent a proffer of evidence, we are unable to say whether Jackie Searcy's testimony would have reflected on the credibility of McKaskle, the state's main witness against defendant on the issue of authorization and intent. Under these circumstances, pursuant to LCE Art. 103, error may not be predicated upon the trial court's ruling which excluded the testimony of Jackie Searcy. For these reasons we view the trial court's error in excluding Jackie Searcy's testimony as harmless error.

CONCLUSION
The trial court did not err in allowing the victim of the crime to testify as an expert witness. The trial court's exclusion of Mrs. Searcy's testimony was error but, due to defendant's failure to create a record of the excluded evidence for appeal, we deem it harmless error.
The record reflects that the court did not inform the defendant of the three-year prescriptive period for filing for post-conviction relief, as provided by LSA-C.Cr.P. Art. 930.8. This error has no effect on the validity of the proceedings. The trial court is ordered to inform the defendant of his rights pursuant to Article 930.8.
Finding no reversible error, we affirm defendant's conviction.
AFFIRMED.