(No. 60387.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SERGEI HOLOWKO, Appellee.

*Opinion filed November 21, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, and Michael E. Shabat, Joan S. Cherry, David A. Cuomo, Neil J. Linehan and Richard A. Stevens, Assistant State's Attorneys, of counsel), for the People.

Adam N. Stillo, Jr., of Alan Masters, P.C., of Argo-Summit, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a complaint filed in the circuit court of Cook County, defendant, Sergei Holowko, was charged with the offense of harassment by telephone (Ill. Rev. Stat.

1981, ch. 134, par. 16.4—1(1)). Pursuant to Supreme Court Rule 604(a) (87 Ill. 2d R. 604(a)), the People appealed from the circuit court's order allowing defendant's motion *in limine* to exclude from evidence certain telephone "trap" or "line tracer" records made by the Illinois Bell Telephone Company. The appellate court affirmed (124 Ill. App. 3d 426), and we allowed the People's petition for leave to appeal (94 Ill. 2d R. 315(a)).

The complaint charged that on June 16, 1982, defendant made an obscene phone call to the complainant, Ronald Smith. The record shows that complainant contacted the Palos Hills police department regarding "harassing phone calls" he had received at his home. During its investigation of the alleged harassing calls, the department, sometime prior to June 16, 1982, requested that Illinois Bell Telephone Company place a "trap" on complainant's telephone. A telephone "trap" or "tracer" is an electronic device whereby a computer automatically records the telephone numbers of all calls coming into the "trapped" telephone. The information generated by the trap placed on complainant's line indicated that on June 16, 1982, complainant received a telephone call from a telephone owned by defendant.

Defendant filed a motion *in limine* alleging that under the provisions of section 115—5(c)(2) of the Code of Criminal Procedure of 1963, the trap records were inadmissible because they were made "during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind." Ill. Rev. Stat. 1981, ch. 38, par. 115—5(c)(2).

Section 115—5 of the Code of Criminal Procedure of 1963 provides in pertinent part:

"(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occur-

rence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

\* \* \*

(c) No writing or record made in the regular course of any business shall become admissible as evidence by the application of this Section if:

\*\*\*

(2) Such writing or record has been made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind." Ill. Rev. Stat. 1981, ch. 38, pars. 115—5(a), (c)(2).

The circuit court, finding that the trap had been "installed during an investigation," and the record therefore was inadmissible, allowed defendant's motion. The appellate court affirmed, holding that because the trap device was installed at the request of the Palos Hills police, the records were made in the course of an investigation and under section 115—5(c)(2) were inadmissible.

The People contend that the fact that the computer records may have been made during the course of an investigation does not serve to make them inadmissible. They argue that section 115—5(a) codified the common law "shop records rule" exception to the hearsay rule and that section 115—5(c)(2) modified the exception in recognition that business records made in anticipation of litigation do not possess the same trustworthiness as records that are prepared at a time when there is no motivation to falsify. They argue that the records were made by a machine having no capacity to intentionally falsify information, and that the statute is inapplicable. They contend further that to affirm the judgment of the appellate court would render meaningless that portion of section 1—1(5) of the act prohibiting obscene telephone

calls which provides that "[a]ll telephone companies in this State shall cooperate with law enforcement agencies in using their facilities and personnel to detect and prevent violations of this Act." Ill. Rev. Stat. 1981, ch. 134, par. 16.4—1(5).

Defendant contends the tracing records are business records, but are inadmissible pursuant to section 115—5(c)(2) because they were made in the course of a criminal investigation. Defendant argues further that holding the records to be inadmissible will not frustrate the purpose of section 1—1(5), because law-enforcement agencies will still be able to use the traps as an investigative tool to establish probable cause for the arrest and prosecution of those who violate the statute.

We consider first the People's contention that the computerized trap records are not hearsay evidence of the type contemplated by the common law "shop book" rule and section 115—5(a). Citing *State v. Armstead* (La. 1983), 432 So. 2d 837, the People argue that the printout of results of computerized telephone tracing equipment is not hearsay evidence but, rather, "demonstrative evidence of a scientific test or experiment." (432 So. 2d 837, 840.) In *Armstead*, the court distinguished computer-generated data from computer-stored data. Printouts of the computer-stored data constitute statements placed into the computer by out-of-court declarants and cannot be tested by cross-examination. However, computer-generated data are different. The evidence is generated instantaneously as the telephone call is placed, without the assistance, observations, or reports from or by a human declarant. The printouts of such data are merely the tangible result of the computer's internal operations. The court said:

"The invention of electronic switching systems in telecommunications has eliminated the need for manual involvement in a telephone trace. Since the computer is ac-

tually responsible for making the telephone connection, the computer can be programmed to record the source of any incoming call. Thus, the printout of a telephone trace in this type of system does not represent evidence of computer stored declarations. [In the case at bar, t]he computer generated data by recording the source of various telephone connections as it was making them. Therefore, the evidence in this case was generated solely by the electrical and mechanical operations of the computer and telephone equipment, and was not dependent upon the observations and reporting of a human declarant." (432 So. 2d 837, 839-40.)

Also in accord: New Jersey, *State v. Hibbs* (N.J. Super. Ct. App. Div. 1972), 123 N.J. Super. 108, 301 A.2d 767, *on remand* (Mercer County Ct. 1972), 123 N.J. Super. 152, 301 A.2d 789, *aff'd* (N.J. Super. Ct. App. Div. 1973), 123 N.J. Super. 124, 301 A.2d 775; *Commonwealth v. Kurtz* (C.P. Lehigh County 1969), 49 Pa. D. & C. 2d 538.

There can be no question that computer science has created many devices, the reliability of which can scarcely be questioned. We should therefore apply the rule that its accuracy and reliability is judicially noticeable, requiring only proof of the accuracy and proper operation of the particular device under consideration. (See *People v. Donohoo* (1977), 54 Ill. App. 3d 375.) In *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, the court recognized:

"Three potential sources of error underlie a computer record-keeping, data-processing system: 'the input of information by encoding or translating it [source documents] into machine language, the creation of the program which instructs the computer, and the actual mechanical operation of the machine.' (Tapper, *Evidence from Computers,* 8 Ga. L. Rev. 562, 566 (1974).) Moreover, 'if the information from which the print-out is made has not been accurately compiled the computer's output will be similarly incorrect.' (8 Ga. L. Rev. 562, 567.)" (67

Ill. 2d 195, 199.)

We agree with the Supreme Court of Louisiana that the printout of results of computerized telephone tracing equipment is not hearsay evidence of the type contemplated by section 115—5(c)(2), but "represents a self-generated record of its operations, much like a seismograph can produce a record of geophysical occurrences, a flight recorder can produce a record of physical conditions onboard an aircraft, and an electron microscope can produce a micrograph, which is a photograph of things too small to be viewed by the human eye." (*State v. Armstead* (La. 1983), 432 So. 2d 837, 840.) We hold, therefore, that their admission into evidence requires only foundation proof of the method of the recording of the information and the proper functioning of the device by which it was effected and that section 115—5(c)(2) is not applicable.

For the reasons stated, the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Cook County for further proceedings.

*Reversed and remanded.*