NO. 4-95-0557

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from

          Plaintiff-Appellee,           )    Circuit Court of

          v.                            )    McLean County

PHYLLIS HOUSTON,                        )    No. 94CM73

          Defendant-Appellant.          )

                                        )    Honorable

                                        )    Joseph H. Kelly,

                                        )    Judge Presiding.

_________________________________________________________________

          JUSTICE COOK delivered the opinion of the court:

          Following a jury trial, defendant Phyllis Houston, née

Phyllis Hoback, was found guilty of eight counts of telephone

fraud (720 ILCS 365/1(g) (West 1992)) and sentenced to 18 months

of conditional discharge.  She was ordered to pay restitution of

$5,035.06 "to be determined."  Defendant appeals, contending that

(1) the trial court erred in admitting evidence that defendant

applied for phone service in 1989 under the name of "John Hous-

ton," where this prior "bad act" was not probative regarding her

present offenses; (2) the trial court erred in admitting as

business records GTE reports that were generated in preparation

for trial; (3) she was not proved guilty beyond a reasonable

doubt; and (4) the restitution order must be vacated, because it

failed to specify the time and method of repayment.  We affirm in

part, reverse in part, vacate in part, and remand.

          In counts I through IV, defendant was charged with

obtaining telephone service from GTE "by using the name of

Phyllis Hoback as the party to be billed, knowing that service

under the name of Phyllis Houston would be refused."  Each of the

four months that defendant allegedly received telephone service

as Phyllis Hoback (December 1992 through March 1993) was charged

as a separate count.  In counts V through VIII, defendant was

charged with obtaining telephone service "by using the name of

Troy Huston [sic], a minor under the age of 17, as the party to

be billed, knowing that service under the name of Phyllis Houston

would be refused."  Troy Houston, whose last name is spelled with

two o's, is one of defendant's sons.  Each month of service

received in Troy's name, from May 1993 to August 1993, was

charged as a separate count.

          Prior to trial, defendant filed a motion in limine to

preclude evidence that she applied in 1989 for phone service

under the name of John Houston.  Defendant's motion was denied. 

          At trial, Robert Hanner, an investigator employed in

GTE's security department, was the State's sole witness.  Hanner

began investigating defendant in August 1993 after GTE's billing

center sent him records of three unpaid accounts in the names of

John Houston, Phyllis Hoback, and Troy Huston.  In October 1993,

Hanner and another GTE investigator interviewed defendant at her

residence.  They obtained a written statement from defendant,

which was entered into evidence.

          In the statement, defendant related that in 1978, she

and her family had resided on Center Street in Bloomington,

Illinois.  Their telephone service at this address was under her

husband's name, Roy Houston, Sr. (Roy Sr.).  The service was

disconnected for nonpayment of bills.  In 1989, the family moved

to Anchor, Illinois.  Defendant's husband instructed defendant to

apply for telephone service using the name "John Houston." 

Defendant and Roy Sr. have a son named John (or Jonathan) Hous-

ton, who was 16 years old at the time.  Roy Sr. told defendant

that he was unable to obtain telephone service in his own name

because of his bad debt with GTE.  He threatened defendant and

her children with bodily harm unless she applied to GTE.  She

complied.  The John Houston account was disconnected in fall 1992

with an unpaid balance of $6,712.73.

          In November 1992, shortly after her divorce from Roy

Sr., defendant and her children moved to 202 South Prospect,

Apartment 105K, Bloomington, Illinois.  Defendant applied for

telephone service at this address using her maiden name, Phyllis

Hoback.  She wrote, "[w]hen I applied for the telephone in my

maiden name, I showed the GTE representative my divorce decree,

where I took my maiden name back."  The Phyllis Hoback account

was disconnected for nonpayment of $2,310.83.  Telephone service

was reinstated at defendant's address under the name of Troy

Houston.  Defendant wrote, "I would state that my son Troy

applied for the telephone service in his name without my know-

ledge."  The Troy Houston (or "Huston") account was disconnected

in August 1993 with an unpaid balance of $2,724.20.

          Defendant signed her statement "Phyllis S. Hoback

Houston."  After signing, defendant offered to pay Hanner $3,000

to settle the accounts.  Hanner refused.

          Hanner testified that when a potential customer applies

for telephone service, GTE runs the customer's name, social

security number and prior address through a computer system

called the "Recoup."  If the Recoup does not reveal a bad debt,

GTE will go ahead and establish service.  GTE does not ask

applicants their age.  Hanner assumed that defendant applied for

service over the telephone.  However, on cross-examination he

admitted that he was not present when the applications were made,

and he did not know whether the applications were made in person

or over the telephone.  

          Over defendant's objection, the State introduced

computer records of the John Houston, Phyllis Hoback, and Troy

Huston accounts.  These records were generated between August

1993 and October 1993 by Hanner during the course of his investi-

gation.  The records indicated that a large number of phone calls

were made on the Phyllis Hoback and Troy Huston accounts.  One

printout showed that the John Houston account was delinquent

$6,712.73.  According to another printout dated September 17,

1993, the Phyllis Hoback account was delinquent $2,250.83, but

someone had handwritten $2,310.83 beneath the first figure.  The

Troy Huston account was delinquent $2,724.20 as of September 9,

1993, and $2,922.98 as of September 19, 1993.  One-time payments

of $600 and $200 were credited to the Phyllis Hoback and the Troy

Huston accounts, respectively.  No other payments were listed.  

          Defendant testified that her name was Phyllis Suzanne

Houston Hoback.  She was married to Roy Sr. from 1970 to 1992. 

She stated that her former husband had constantly threatened and

abused her and the children.  In 1989, he threatened to kill her

if she did not apply for telephone service in the name of John

Houston, their son.  He was arrested for molesting the children

in July 1991 or 1992, and he was currently serving a 48-year

prison sentence.  Following her divorce, defendant moved to the

Prospect Road address in Bloomington, but her former husband

continued to terrorize her.  She lived with her children, Roy

Jr., Troy, Channelle, and Jeremiah, plus "three or four other

kids that the kids had brought in."

          In November 1992, defendant applied for telephone

service in her maiden name for her Bloomington residence.  She

explained, "I went down to the telephone company with my divorce

papers and said this is my name.  I have just moved from Route 1,

Anchor.  And I am afraid because [my ex-husband] is still trying

to kill me and the kids, and I want the phone service in my

maiden name so he can't find us[.]"  In addition to the divorce

papers, defendant showed the GTE representative her birth certif-

icate, which confirmed that her maiden name was Phyllis Suzanne

Hoback.  Defendant explained that she did not believe her ex-

husband was smart enough to look for her under her maiden name. 

GTE records reveal that the Phyllis Hoback account was for an

unlisted telephone number.

          Defendant stated she had financial problems following

her divorce.  She had sold her farm, but the proceeds were placed

in trust and unavailable to her.  She was living on $400 a  a month,

and she was unable to pay her bills.  She did not know when the

Phyllis Hoback account was disconnected.  Nor did she know who

reconnected telephone service in Troy Huston's name, at least not

until after she spoke with Hanner.  She explained, "I think I was

having a nervous breakdown at the time.  I would get the mail out

of the mailbox and throw it in the dish.  I wouldn't look at it." 

          Jonathan Houston and Troy Houston confirmed that their

father was physically and verbally abusive.  Neither Jonathan nor

Troy applied for telephone service in their own name.

          Roy Jr., defendant's 20-year-old son, testified that he

moved in with his girlfriend after his parents' divorce, but he

stayed at defendant's Prospect Street address four or five times

a week.  At the time of trial, Roy Jr. was serving prison sen-

tences for burglary, forgery, and aggravated criminal sexual

abuse.  Roy Jr. stated that he was the one who applied for the

Troy Houston account.  "I walked into GTE Phone Mart and told

them I wanted a telephone, and they said okay."  He applied under

his brother's name "[b]ecause I had let my girlfriend put a phone

in my name and she ran the bill up outrageously and I never paid

it."  Roy Jr. did not tell his mother what he had done.

          In rebuttal, Hanner claimed that the GTE Phone Mart

would have required identification, such as a driver's license or

State identification card, before accepting an application.  Roy

Jr. did not resemble Troy.  Hanner admitted, however, that he did

not know whether the GTE representative followed the proper

application procedure.  

          Defendant first contends that the trial court erred in

admitting evidence that she applied for phone service in 1989

under John Houston's name.  She argues that this evidence was not

probative of the charged offense, which involved telephone

service in 1992 to 1993, and it served only to portray her as an

inveterate abuser of telephone service.  We disagree.

          Evidence of uncharged offenses or bad acts is not

admissible to show a defendant's propensity to commit crime. 

People v. Illgen, 145 Ill. 2d 353, 364, 583 N.E.2d 515, 519

(1991).  Such evidence is admissible, however, if it is relevant

for any other purpose other than to show the propensity to commit

crime.  Illgen, 145 Ill. 2d at 365, 583 N.E.2d at 519.  When

evidence of other crimes is offered, the trial court must weigh

its probative value against its prejudicial effect, and may

exclude the evidence if its prejudicial effect substantially

outweighs its probative value.  People v. Stewart, 105 Ill. 2d

22, 62, 473 N.E.2d 840, 860 (1984).  The trial court's ruling as

to the admissibility of such evidence will not be reversed absent

an abuse of discretion.  People v. Oaks, 169 Ill. 2d 409, 454,

662 N.E.2d 1328, 1348 (1996).

          Here, evidence that defendant applied for telephone

service under the name John Houston was admissible to show her

intent.  Where evidence of a defendant's involvement in another

offense is offered to prove the absence of an innocent frame of

mind or the presence of criminal intent, mere general areas of

similarity between the two offenses will suffice for the

evidence's admission.  Oaks, 169 Ill. 2d at 454, 662 N.E.2d at

1348.  The evidence revealed defendant knew that GTE kept a bad

debt file, those named in the file would be refused service, and

it was possible for a debtor to obtain telephone service by

applying under the name of a child.  Intent is notoriously

difficult to establish through direct evidence.  Defendant's past 

dealings with GTE provided the best circumstantial evidence of

her intent to defraud and, thus, the evidence was highly proba-

tive.  We note that defendant made no attempt to limit the

prejudicial effect of the evidence by requesting that the jury be

instructed that the evidence was being received for a limited

purpose.  The trial court did not abuse its discretion in admit-

ting the evidence.

          Defendant next contends that GTE's computer records

were generated in anticipation of litigation, and thus the trial

court erred in admitting the records under the business records

exception to the hearsay rule.   Section 115-5(a) of the Code of

Criminal Procedure of 1963 (Code) provides for the introduction

into evidence of records "made in regular course of any business

*** if it was the regular course of such business to make such

memorandum or record at the time of such act, transaction, occur-

rence, or event or within a reasonable time thereafter."  725

ILCS 5/115-5(a) (West 1992).  In contrast, records are inadmissi-

ble if they were "made by anyone during an investigation of an

alleged offense or during any investigation relating to pending

or anticipated litigation of any kind."  725 ILCS 5/115-5(c)(2)

(West 1992).  

          At trial, defendant did not object to GTE's computer

records on the grounds that they were generated during an inves-

tigation in anticipation of litigation.  Instead, defendant

objected that the State failed to establish an adequate founda-

tion supporting the reliability of the records, an argument

defendant has abandoned on appeal.  Moreover, defendant did not

object to the computer records in her post-trial motion.  "Both 

a trial objection and a written post-trial motion raising the

issue are required for alleged errors that could have been raised

during trial."  (Emphasis in original.)  People v. Enoch, 122

Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  The issue is

therefore waived on appeal. 

          Regardless, we find that the records were properly

admitted, even though they were retrieved during a criminal

investigation.  Tangible printouts of "computer-stored" data are

admissible under the business records exception to the hearsay

rule if (1) the electronic computing equipment is recognized as

standard, (2) the input is entered in the regular course of

business reasonably close in time to the happening of the event

recorded, and (3) the foundation testimony establishes that the

sources of information, method and time of preparation indicate

its trustworthiness and justify its admission.  People v. Bynum,

257 Ill. App. 3d 502, 512, 629 N.E.2d 724, 731 (1994).  Here,

however, the bulk of the billing data was generated instanta-

neously by the computer when telephone calls were placed from

defendant's accounts.  It was not entered by a human declarant. 

"Computer-generated" records are admissible under a lesser

standard.  All that must be shown is that the recording device

was accurate and operating properly when the evidence was gener-

ated.  Bynum, 257 Ill. App. 3d at 513, 629 N.E.2d at 731; People

v. Holowko, 109 Ill. 2d 187, 192, 486 N.E.2d 877, 879 (1985); see

also People v. Casey, 225 Ill. App. 3d 82, 88-89, 587 N.E.2d 511,

514-15 (1992) (contrasting "computer-stored" data with "computer-

generated" data).  Defendant does not contest the accuracy of

GTE's billing computer.

          Accurate computer data does not become inadmissible

simply because it was retrieved in anticipation of litigation,

any more than a ledger ceases to be a business record when it is

brought into the courtroom.  "But if the retrieval process is

designed from a litigant's various sources of information and

purposeful selection that cannot be independently reviewed by the

defense," then the retrieved material may be challenged as being

prepared in anticipation of litigation.  Casey, 225 Ill. App. 3d

at 90, 587 N.E.2d at 515.  Here, there was no "purposeful selec-

tion."  The computer's billing records were simply downloaded in

an unaltered form.

          As noted above, the bulk of the billing records were

generated contemporaneously when the telephone calls were placed,

prior to the commencement of any criminal investigation.  On one

printout, the phrases "SS # NOT FOR PHYLLIS-REAL NAME PHYLLIS

HOUSTON" and "SS # NOT FOR PHYLLIS-REAL NAME PHYLLIS HOUSTON-

SUSAN HOUSTON" and "PLS VERIFY LAST NM ON DL#-NOT FOR A HOBACK"

each appeared twice.  It is unclear when or by whom these com-

ments were entered into GTE's computer.  Had defendant specifi-

cally objected to these comments, it might have been proper to

excise them from the other, properly admissible, records. 

Defendant did not do so, and we decline to find error.           

Defendant also contends the reports were irrelevant.  We dis-

agree.  The billing reports established that defendant obtained

telephone service, a necessary element of the offense.  The

reports also revealed that an excessive number of telephone calls

were placed from defendant's address, a fact defendant would

likely have been aware of.  This provided some evidence of

defendant's intent to defraud.

          Defendant argues the State failed to prove beyond a

reasonable doubt that she fraudulently obtained telephone ser-

vice.  We agree that the State failed to prove counts I through

IV, but we affirm defendant's conviction for count V.  Defendant

was convicted of violating section 1(g) of the Telephone Charge

Fraud Act (Act), which provides as follows:

               "Any individual, corporation, or 

          other person, who, with intent to defraud or 

          to aid and abet another to defraud any in-

          dividual, corporation, or other person, of 

          the lawful charge, in whole or in part, for 

          any telecommunications service, shall obtain, 

          or attempt to obtain, or aid and abet another 

          to obtain or to attempt to obtain, any tele-

          communications service:

                                   * * *

               (g) by any other trick, stratagem, im-

          personation, false pretense, false represen-

          tation, false statement, contrivance, device, 

          or means, shall be deemed guilty of a Class 

          A Misdemeanor."  720 ILCS 365/1(g) (West 1992).

          When a challenge to the sufficiency of the evidence is

raised on appeal, the relevant inquiry is whether, after viewing

the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the necessary elements of

the crime beyond a reasonable doubt.  People v. Burrows, 148 Ill.

2d 196, 225, 592 N.E.2d 997, 1009 (1992), citing Jackson v.

Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct.

2781, 2789 (1979).  Neither case law nor the parties discuss what

elements are necessary to establish a violation of section 1(g)

of the Act.  Our research reveals but a single case involving the

Act, People v. Smith, 72 Ill. App. 3d 956, 390 N.E.2d 1356

(1979), and the facts of Smith are inapposite to the present

case.  In Smith, the defendant violated section 15c(c) of an

earlier version of the Act by using a "blue box" electronic

device to avoid long-distance tolls. Smith, 72 Ill. App. 3d at

965, 390 N.E.2d at 1363; Ill. Rev. Stat. 1973, ch. 134, par.

15c(c).        

          To establish a violation of section 1(g) of the Act,

the State must prove that a defendant (1) obtained or attempted

to obtain telecommunications service, (2) with intent to defraud

the telecommunications service provider of its full lawful

charge, and (3) by any "trick, stratagem, false pretense, false

representation, false statement, contrivance, device, or means." 

720 ILCS 365/1(g) (West 1992).  The third element requires some

interpretation.  Several terms, all connoting deception, are

listed in the disjunctive.   After listing synonyms for decep-

tion, section 1(g) forbids telephone fraud by any other "means." 

720 ILCS 365/1(g) (West 1992).  Under the rule of ejusdem gene-

ris, when general words follow specific words in a statute, the

general words must be construed to include only things of the

same kind as those indicated by the specific words.  Bonfield v.

Jordan, 202 Ill. App. 3d 638, 645, 560 N.E.2d 412, 416-17 (1990). 

"[A]ny other *** means" (720 ILCS 365/1(g) (West 1992)) must

therefore refer to any deceptive means.  Like more traditional

forms of fraud, violations of section 1(g) of the Act require a

false representation of material fact.  See, e.g., People v.

Yarbrough, 128 Ill. 2d 460, 473, 539 N.E.2d 1228, 1234 (1989).

          Here, the State alleged that defendant twice misrepre-

sented her name to GTE, knowing that GTE would refuse her tele-

phone service if it was aware of her true identity.  If proved,

these two material misrepresentations would support convictions

for two counts of telephone fraud.  However, the State charged

defendant with a separate count for each month she received

telephone service, and defendant was convicted of eight counts of

telephone fraud.  The State apparently charged each month of

service as a separate count because GTE chooses to bill its

customers on a month-to-month basis.  Neither defendant nor the

State addresses whether eight convictions for telephone fraud can

be premised on only two fraudulent misrepresentations.  We hold

that they cannot.  The statute's use of the word "obtain" implies

that the crime is completed when a defendant establishes or

attempts to establish access to telecommunications service.  The

making of each call once telephone service has been fraudulently

obtained does not constitute a new offense, unless the defendant

commits some fresh fraud.  We note that the legislature has

amended the Act, effective January 1, 1994, to provide that the

defrauding of services in excess of $300 is a Class 4 felony. 

720 ILCS 365/1(g) (West 1994); Pub. Act 88-75, §15 (eff. January

1, 1994) (1993 Ill. Laws 1066, 1069).  This further suggests that

multiple uses of fraudulently obtained telephone service should

be counted as a single crime, since rarely will a single tele-

phone call result in charges in excess of $300. 

          In counts I through IV, defendant was charged with

fraudulently obtaining telephone service under her maiden name. 

Defendant consistently maintained she applied for phone service

in her maiden name, Phyllis Suzanne Hoback, after showing GTE her

birth certificate and divorce decree.  Defendant further stated

that her maiden name was restored after her divorce.  It appears

defendant is inconsistent in the use of her maiden name.  She

signed her statement "Phyllis S. Hoback Houston," but she testi-

fied that her name was "Phyllis Suzanne Houston Hoback." 

Defendant's use of her maiden name, even if that name is now her

legal name, could support a conviction for telephone fraud, if

defendant was concealing her "true" identity.  However, there is

no evidence any deception occurred, because defendant supplied

GTE with enough information that it was or should have been aware

of her identity.  Hanner testified GTE would have obtained

defendant's social security number at the time she applied for

service.  GTE's billing records confirm that GTE knew both

defendant's social security number and driver's license number. 

We therefore reverse defendant's convictions for counts I through

IV. 

          In counts V through VIII, defendant was charged with

fraudulently obtaining telephone service in May 1993 under the

name of Troy Huston.  Defendant contends there is no evidence

that she was the person who applied in Troy's name.  Roy Jr.

testified that he was responsible for that act.  Nevertheless, we

find that a rational jury could infer that defendant made the

application.  Defendant was the sole adult residing full-time at

the address.  She admitted she used the telephone regularly, but

she claimed not to know her telephone was disconnected on May 5,

1993, and remained disconnected until May 18, 1993, despite the

enormous number of telephone calls placed from her residence. 

She received telephone bills in Troy's name, but never questioned

those bills.  She had applied for telephone service under a

different son's name once before.  The jury was not required to

believe Roy Jr., a convicted felon serving time in prison, when

he claimed to be the person who applied for telephone service. 

We therefore affirm defendant's conviction for count V.  However,

as discussed above, we hold that defendant's single fraudulent

application cannot support convictions for four counts of tele-

phone fraud.  We vacate defendant's convictions for counts VI

through VIII.

          Because we are reversing (counts I through IV) or

vacating (counts VI through VIII) all but one (count V) of

defendant's convictions, and because she received a single

sentence on all eight counts, we remand for resentencing.  On

remand, the circuit court should determine a payment schedule as

part of its order of restitution.  See 730 ILCS 5/5-5-6(f)

(West 1992).

          Affirmed in part, reversed in part, and vacated in

part; cause remanded.

          STEIGMANN, P.J., and McCULLOUGH, J., concur.