**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2005**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

KENNETH HAMILTON,

      Defendant-Appellant.

No. 04-4091

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:02-CR-55-TS)**

---

Randall W. Richards, Ogden, Utah, for the defendant-appellant.

Mark K. Vincent, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the briefs), District of Utah, Salt Lake City, Utah, for the plaintiff-appellee.

---

Before **PORFILIO, BRISCOE**, Circuit Judges, and **BROWNING**, District Judge.[*]

---

**BRISCOE**, Circuit Judge.

---

    [*] The Honorable James O. Browning, United States District Judge for the District of New Mexico, sitting by designation.

Defendant Kenneth Hamilton was convicted, following a jury trial, of transporting child pornography in interstate commerce in violation of 18 U.S.C. § 2252A(a)(1), and was sentenced to a term of imprisonment of twenty-four months. Hamilton now appeals, arguing (1) the district court erred in admitting into evidence information that accompanied the pornographic images he allegedly "uploaded" to an Internet newsgroup, (2) the district court erred in denying his motion for judgment of acquittal, and (3) the district court erred in failing to give him proper departure credit at sentencing. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I.

On October 1, 2001, Christian Schneider, a member of the German National Police working in Wiesbaden, Germany, was using a police-developed computer program called "Perkeo" to scan the internet for known images of child pornography. ROA, Vol. III, at 14-17. Based on the results produced by the Perkeo program, Schneider found postings of approximately fifty-six images of child pornography on the newsgroup[1] identified as "alt.binaries.pictures.underage.admirers." Id. at 19, 21. Each of the images included a computer-generated "header" containing information regarding when each image was posted to the newsgroup and the "IP address" ("165.121.27.94") of the person who posted

---

[1] According to the trial testimony, a newsgroup is a "form within the internet" that is like a bulletin board system, allowing users to read and post messages, responses, or images relating to all types of topics. ROA, Vol. IV, at 69.

the image.[2]  Id. at 19, 21-22.  Using a web site called "www.checkdomain.com,"
Schneider determined the owner of the IP address to be a California-based internet
service provider called Earthlink.  Schneider concluded his investigation by preparing a
report regarding his findings.

On October 5, 2001, the German National Police faxed information regarding the
results of Schneider's investigation to the United States Department of Homeland
Security, Immigration and Customs Enforcement (DOHSIC).  Theodore Schmitz, an
agent with the DOHSIC, sent a summons to Earthlink requesting information on the
person who had been using the IP address identified on the images found by Schneider.
Earthlink, using regularly-maintained logs of its users, determined that defendant
Hamilton, a Utah resident and Earthlink subscriber, had been assigned the IP address at
issue during the date and time the images found by Schneider were posted to the
newsgroup.

The DOHSIC investigation was subsequently assigned to special agent David
Pezzutti, who was based in the DOHSIC's Salt Lake City office.  On June 18, 2002,
Pezzutti met with Hamilton at the Office of Special Investigation (OSI) on Hill Air Force
Base (Hamilton resided on the base).  Pezzutti initially told Hamilton that he was

---

[2] The government's evidence at trial established that an IP address, also sometimes referred to as the Internet Protocol address, is a unique number identifying the location of an end-user's computer.  When an end-user logs onto a dial-up internet service provider, they are assigned a unique IP number that will be used for that entire dial-up session. Only one computer can use a particular IP address at any specific date and time.

investigating a case of credit card fraud and asked Hamilton if he would consent to a search of his computer. Hamilton agreed to the search. Accordingly, Pezzutti, Hamilton, and other agents went to Hamilton's house and, using a computer program called "Presearch," conducted a "cursory search" of Hamilton's computer.[3] Id. at 100. Although the search revealed images of pornography on Hamilton's computer, it did not produce any images of child pornography.

Following the search of Hamilton's computer, Pezzutti, Hamilton, and the other agents returned to the OSI office. While en route from Hamilton's home to the OSI office, Pezzutti advised Hamilton that he was investigating a lead regarding child pornography that he believed had been posted from Hamilton's computer to the newsgroup. At the OSI office, Hamilton agreed to waive his Miranda rights and speak with Pezzutti. Hamilton admitted that he had first downloaded images of child pornography from the newsgroup and then "return[ed] the favor by uploading them back onto the Web site for others to view." Id. at 102. Hamilton stated: "I knew underage was illegal and now I'm here. I'm sorry. I knew underage was illegal. I was fascinated with it and now I'm here." Id. Hamilton ultimately gave Pezzutti a signed statement that read as follows:

On October 2001, I, Kenneth Hamilton, admit to posting questionable

---

[3] According to the trial testimony, the "Presearch" program does not search any items on the computer that are password-protected, deleted, or hidden in some other way. ROA, Vol. IV, at 100.

4

pictures to alt.binaries.underage.admirers.newsgroup, approximately 30 to 50 "DUPLA pictures." I admit to this of my own free will. I do not write this statement under duress nor was I promised anything.

Id. at 104.

On July 17, 2002, Hamilton was indicted on one count of knowingly transporting or shipping in interstate commerce child pornography in violation of 18 U.S.C. § 2252A(a)(1), and one count of knowingly transporting in interstate commerce obscene matters for distribution in violation of 18 U.S.C. § 1465. The government subsequently dismissed the latter count of the indictment (i.e., the § 1465 charge). The case proceeded to trial on December 1, 2003. At the conclusion of all the evidence, the jury found Hamilton guilty of the § 2252A(a)(1) charge. Hamilton filed a post-verdict motion for judgment of acquittal. That motion was denied by the district court. On April 1, 2004, the district court sentenced Hamilton to a term of imprisonment of twenty-four months (a sentence at the bottom of the 24-30 month guideline range).

II.

*Admission of documents*

At trial, the government introduced and the district court admitted copies of approximately forty-four of the images that Hamilton was charged with uploading to the newsgroup. Each of those forty-four images included computer-generated "header" information which listed, in part, the following information regarding the person who posted the images to the newsgroup: screen name, subject of the posting, the date the

5

images were posted, and the person's IP address. Although Hamilton objected to the header information on hearsay grounds, the district court concluded it did not constitute hearsay. Hamilton challenges this ruling on appeal.

Generally speaking, we review a district court's determinations regarding admission of evidence for abuse of discretion. United States v. Jenkins, 313 F.3d 549, 559 (10th Cir. 2002). Because, however, hearsay determinations are particularly fact and case specific, our review of those decisions is "especially deferential." United States v. Chavez, 229 F.3d 946, 950 (10th Cir. 2000); see United States v. Pulido-Jacobo, 377 F.3d 1124, 1132 (10th Cir. 2004) (same).

"Hearsay is defined as 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" United States v. Jefferson, 925 F.2d 1242, 1252 (10th Cir. 1991) (quoting Fed. R. Evid. 801(c)). "A statement is an 'oral or written assertion . . . of a person, if it is intended by the person as an assertion." Id. (quoting Fed. R. Evid. 801(a)). In turn, "[a] 'declarant' is a person who makes a statement." Fed. R. Evid. 801(b). "Hearsay evidence cannot be admitted unless it falls under an exception." Jefferson, 925 F.2d at 1252 (citing Fed. R. Evid. 802).

The district court in this case correctly concluded that the header information that accompanied each pornographic image was not hearsay. Of primary importance to this ruling is the uncontroverted fact that the header information was automatically generated

6

by the computer hosting the newsgroup each time Hamilton uploaded a pornographic image to the newsgroup. In other words, the header information was generated instantaneously by the computer without the assistance or input of a person. As concluded by the district court, this uncontroverted fact clearly places the header information outside of Rule 801(c)'s definition of "hearsay." In particular, there was neither a "statement" nor a "declarant" involved here within the meaning of Rule 801.[4] See United States v. Khorozian, 333 F.3d 498, 506 (3d Cir. 2003) (concluding that header information automatically generated by fax machine was not hearsay because "nothing 'said' by a machine . . . is hearsay.") (internal quotations omitted); People v. Holowko, 486 N.E.2d 877, 878 (Ill. 1985) (concluding "that the printout of results of computerized telephone tracing equipment is not hearsay evidence" but rather "'a self-generated record of its operations, much like a seismograph [or] . . . a flight recorder . . . .'"); see generally John W. Strong, McCormick on Evidence, § 246, at 97 (5th ed. 1999) ("The definition [of hearsay set forth in Rule 801] does not in terms say that everything not included within the definition is not hearsay, but that was the intended effect of the rule, according to the Advisory's Committee's Note.").

*Denial of motion for judgment of acquittal*

Hamilton contends the district court erred in denying his motion for judgment of

---

[4] Obviously, the result might be different if "computer-stored" data, as opposed to computer-generated data, were involved. See Holowko, 486 N.E.2d at 878-79 (discussing differences between two types of data).

acquittal. According to Hamilton, the government failed to prove beyond a reasonable doubt that the two females depicted in the images at issue were under the age of eighteen. We "review[] the sufficiency of the evidence to support a conviction or the denial of a defendant's motion for judgment of acquittal de novo." United States v. Williams, 376 F.3d 1048, 1051 (10th Cir. 2004). In doing so, we "view the evidence in the light most favorable to the government and determine whether a reasonable jury could have found the defendant guilty of the crime beyond a reasonable doubt." Id.

As noted, Hamilton was charged with and convicted of violating 18 U.S.C. § 2252A(a)(1), which punishes any person who "knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography." The term "child pornography," as used in § 2252A(a)(1), is defined to include "any visual depiction, including any picture, or computer-generated image or picture or image, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." ROA, Vol. I, Doc. 85, Instruction No. 20 (jury instruction given by district court to jury); see 18 U.S.C. § 2256(8)(A) (statutory definition of "child pornography" upon which the district court relied). In turn, the term "minor," as used in the definition of "child pornography," "means any person under the age of eighteen years . . . ." 18 U.S.C. § 2256(1). To prove that the images posted by Hamilton to the newsgroup constituted "child pornography," the government thus had to

8

establish, in part, that one or both of the females depicted in the images were under the age of eighteen.

To establish this fact, the government relied on the testimony of Dr. Lori Frasier, a pediatrician and medical director of a medical assessment team at the Center for Safe and Healthy Families at Primary Children's Medical Center in Salt Lake City, Utah. Dr. Frasier, who was designated by the district court (without objection from the defendant) as an expert in the fields of pediatrics and child physical assessment, described in detail how she used the Tanner Staging process to assess the images at issue and arrive at an opinion regarding the likely ages of the two females depicted in the images. Based upon that assessment, Dr. Frasier opined that, "[b]eyond a medical certainty," one of the girls depicted in the images was under the age of eighteen. ROA, Vol. IV, at 144. As for the second female depicted in the images, Dr. Frasier opined that she was "likely under age 18," but could not say so with medical certainty. Id. at 145.

In his appeal, Hamilton contends that Dr. Frasier's testimony was not sufficient to establish the age of the females beyond a reasonable doubt because "[h]er testimony . . . was based upon some significant assumptions that cannot be made in the given case." Aplt. Br. at 11. In particular, Hamilton asserts that Dr. Frasier "assumed that the models in the images were in their natural state without any body paint, shaving, or other alteration." Id. In addition, Hamilton notes that Dr. Frasier admitted she did not know the "race," "ethnic background," or "medical history" of either of the two females. Id.

9

Notably, Hamilton's counsel posed these identical concerns to Dr. Frasier during cross-examination at trial. Dr. Frasier admitted that viewing only the images prevented her from reaching definitive conclusions regarding certain aspects of the two females (e.g., their precise racial or ethnic background, their medical history, whether nor not they had been subjected to shaving or laser hair removal). Nevertheless, on redirect, Dr. Frasier continued to stand by her conclusions regarding the ages of the two females, i.e., that one of the females was "likely under age 18" and that the other female was, "[b]eyond a medical certainty . . . under 18." ROA, Vol. IV, at 154. Moreover, when again asked by Hamilton's counsel about these topics on recross, Dr. Frasier noted that she "would need to have some evidence that" the females had been subjected to hair removal or body make-up, and that she "wouldn't assume that" based upon the images. Id. at 155.

Considering Dr. Frasier's testimony as a whole, we conclude it was sufficient to allow the jury to find beyond a reasonable doubt that at least one of the two females depicted in the images was under the age of eighteen.[5] Accordingly, we conclude the district court properly denied Hamilton's motion for judgment of acquittal.

---

[5] It is also worth noting that the government introduced at trial Hamilton's statements to the DOHSIC agent Pezzutti that he "knew underage was illegal." ROA, Vol. IV at 102. This statement appears to indicate that Hamilton knew, or at least suspected, that the females depicted in the images were under the age of eighteen.

*Failure to give proper departure credit*

Prior to sentencing, Hamilton filed a motion asking the district court "to depart from the Federal Sentencing Guidelines with a downward departure to a category I Level 10 Zone B with a low-end sentence of six (6) months." ROA, Vol. I, Doc. 92, at 1. In support of that motion, Hamilton argued that "the following . . . mitigating factors permitting downward departure [we]re applicable in his case: § 5H1.5, employment record; § 5H1.6, family ties and responsibilities; and pursuant to § 5K2.20 a departure for aberrant behavior." Id., Doc. 93, at 1-2. In addition, Hamilton argued that the district court could downward depart based upon his "rehabilitation since the charge was filed and prior to sentencing . . . ." Id. at 2. During the sentencing hearing, Hamilton also argued that he was entitled to a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Supp. ROA, Vol. I, at 13.

The district court concluded that Hamilton was "not entitled to receive credit for acceptance of responsibility under . . . Section 3E1.1" because "at trial [Hamilton] attempted to soften or lessen his actions," and because, in the court's view, Hamilton had never fully accepted responsibility for his actions. Id. at 19-20. The district court did conclude, however, that Hamilton was entitled to a two-level reduction for aberrant behavior pursuant to § 5K2.20. Id. at 21 ("The Court finds that the circumstances surrounding this case and the life history of the defendant demonstrates that this criminal offense was indeed a marked deviation from an otherwise law-abiding life. Therefore,

11

the Court would depart downward two levels pursuant to 5K2.20.").  As for the other three bases for downward departure cited by Hamilton, i.e., families ties and responsibilities, employment record, and rehabilitation, the district court concluded that none of them warranted a downward departure.  Id. at 21-22.

On appeal, Hamilton contends the district court "failed to give proper departure credit during sentenc[ing]."  Aplt. Br. at 11.  According to Hamilton, the district court should have granted him (1) "a three level departure for Acceptance of Responsibility under § 3E1.1," (2) "a two level departure" under § 5H1.5 based on his employment record, (3) "a two level departure" under § 5H1.6 for "families ties and responsibilities," (4) a three level departure pursuant to § 5K2.20 for aberrant behavior, and (5) a two level departure based upon his "rehabilitation since the charge was filed and prior to sentencing . . . ."  Id. at 28.

a) *Acceptance of responsibility - § 3E1.1*

"Whether the facts of a particular case warrant a reduction for acceptance of responsibility is a question of fact that we review under the clearly erroneous standard." United States v. Dazey, 403 F.3d 1147, 1172 (10th Cir. 2005).  "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.  For this reason the determination of the sentencing judge is entitled to great deference on review." Id. (internal quotations omitted).

Here, as noted, the district court found that the facts did not warrant a reduction

12

under § 3E1.1 for acceptance of responsibility.  More specifically, the district court found that at trial Hamilton "attempted to soften or lessen his actions," and that his defense at trial was thus not "purely legal . . . ."  Supp. ROA, Vol. I, at 20.  Further, the district stated it had "observed" Hamilton "at trial" and found that he "did not clearly demonstrate an acceptance of responsibility and ha[d] not fully done so since trial."  Id.

Although Hamilton argues in his appellate brief that he "cooperated fully with the government" "from the beginning," he otherwise fails to challenge the district court's findings at sentencing.  Aplt. Br. at 29.  Moreover, as outlined in greater detail in the presentence report, it appears that Hamilton has, both before and after trial, attempted to downplay the extent of his actions.  Thus, there is no basis in the record for concluding that the district court's findings regarding acceptance of responsibility were clearly erroneous.

*b) Aberrant behavior - § 5K2.20*

"Section 5K2.20 of the Sentencing Guidelines provides that a "sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior.'"  United States v. Bayles, 310 F.3d 1302, 1314 (10th Cir. 2002) (quoting USSG § 5K2.20).  "The application notes to USSG § 5K2.20 define 'aberrant behavior' as 'a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise

13

law-abiding life.'" Id. (quoting USSG § 5K2.20 cmt. n.1). We have "characterized the application of the aberrant behavior ground for departure as a largely factual question on which we afford substantial deference to the sentencing court under the Koon abuse of discretion standard." Id.

Here, as noted above, the district court found "that the circumstances surrounding this case and the life history of the defendant demonstrates that this criminal offense was indeed a marked deviation from an otherwise law-abiding life." Supp. ROA, Vol. I, at 21. Accordingly, the district court "depart[ed] downward two levels pursuant to 5K2.20." Id.

In his appeal, Hamilton fails to acknowledge the fact that the district court in fact departed pursuant to § 5K2.20. Indeed, his opening brief reads as if the district court did not grant any departure for aberrant behavior. Hamilton's opening brief does makes reference to his entitlement to a three-level departure for aberrant behavior, and thus could arguably be construed as challenging the district court's decision to depart downward by only two levels. Notably, however, we have clearly held "that the extent of downward departure chosen by the district court is normally not appealable by a defendant . . . ." United States v. Bromberg, 933 F.2d 895, 896 (10th Cir. 1991). In particular, we have held that such a result "is consistent with Congress' intent to avoid unnecessary appeals by limiting review of upward departures to defendants and downward departures to the Government." Id. at 897. Thus, Hamilton is precluded from

14

challenging the extent of the district court's downward departure.

*c) District court's refusal to downward depart on any other basis*

Hamilton contends that he should have received a downward departure of six levels based upon his families ties and responsibilities, his employment record, and his rehabilitation efforts. "This court has no jurisdiction, however, to review a district court's discretionary decision to deny a motion for downward departure on the ground that a defendant's circumstances do not warrant the departure." United States v. Sierra-Castillo, 405 F.3d 932, 936 (10th Cir. 2005). In other words, appellate jurisdiction exists only in "the very rare circumstance that the district court states that it does not have any authority to depart from the sentencing guideline range for the entire class of circumstances proffered by the defendant." United States v. Brown, 316 F.3d 1151, 1154 (10th Cir. 2003). Because a review of the sentencing transcript in this case clearly indicates that the district court knew it had discretion to depart downward, but simply chose not to exercise that discretion, we lack jurisdiction to entertain Hamilton's arguments. Supp. ROA, Vol. I, at 21-22.

The judgment of the district court is AFFIRMED.