# United States Court of Appeals
## For the First Circuit

No. 24-1136

UNITED STATES OF AMERICA,

Appellee,

v.

KEION ROWELL, a/k/a Keion J. Rowell, a/k/a Knutzo,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Gelpí, Lynch, and Howard,
Circuit Judges.

Syrie D. Fried, with whom Good Schneider Cormier Fried &
Brooks were on brief, for appellant.

Leah B. Foley, United States Attorney, with whom Randall E.
Kromm, Assistant United States Attorney, were on brief, for
appellees.

February 18, 2026

**PER CURIAM.** Following the district court's denial of his motion to suppress evidence, a jury convicted Appellant Keion Rowell ("Rowell") of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). The district court sentenced Rowell to 180 months' imprisonment, followed by five years of supervised release.

On appeal, Rowell challenges the district court's denial of his motion to suppress. He also presents a claim of structural error in the temporary sealing of the courtroom during voir dire, even though he failed to object below. Next, he argues the district court erroneously admitted statements without proper foundation under Federal Rule of Evidence 801(d)(2). And finally, he argues that the district court erred under Federal Rule of Criminal Procedure 24(c)(3) in allowing alternate jurors at the close of trial into the deliberation room before being removed and not inquiring into whether they actually participated and influenced deliberations. We reject each of Rowell's arguments, addressing them below *seriatim*.

## I.

### A. Motion to Suppress

Rowell contends that the police violated his Fourth Amendment rights by entering the apartment where he was staying with the minor without a warrant. Thus, he argues that the district court erred in denying his motion to suppress the

body-worn camera video and audio recordings of the police encounter with the occupants of the apartment, as well as the observations made by the police as a result of the entry and the fruits of the "search" that followed. We review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Giambro, 126 F.4th 46, 53-54 (1st Cir. 2025). Because Rowell renewed his motion to suppress at trial, we consider both the evidence presented at the suppression hearing and at trial. United States v. Maldonado-Peña, 4 F.4th 1, 22 n.13 (1st Cir. 2021).

The facts in the light most favorable to the district court's ruling, see Giambro, 126 F.4th at 53-54, evince the following. On January 18, 2021, the minor's father filed a missing person's report with the Belmont Police Department, stating that the minor was "endangered." On January 21, 2021, the Belmont Police Department obtained information that revealed that the minor's Snapchat account was accessed from an IP address associated with the apartment Rowell was staying at. Based on this information, the Boston Police Department dispatched several officers to that location. The officers first spoke through a window with an occupant of the apartment, who told them they would not be allowed inside. A tenant from a different unit in the building then admitted the officers into the building's common vestibule. The officers proceeded to the apartment associated

with the router ping, opened the unlocked door, and stepped a short distance inside -- one officer about five feet into the apartment and another barely over the threshold -- before asking the occupants for permission to search for the missing minor, which was not granted. During this conversation, Rowell walked out of a bedroom holding a cell phone. This was captured on one of the officers' body-worn cameras.

In denying the suppression motion, the district court found that the police officers held an objectively reasonable basis for believing that the minor, who had been reported missing, was present in the apartment and needed immediate aid. See Case v. Montana, No. 24-624, 2026 WL 96690, at *4 (U.S. Jan. 14, 2026). All of the actions taken by the officers were justified as reasonable responses to information they had received indicating an emergency existed. Rowell argues that law enforcement solely relied on the information regarding the minor's access to her Snapchat account from the IP address associated with the apartment and that this alone did not create an objectively reasonable basis for the officers to believe the minor was inside the apartment. This argument, however, is belied by the record evidence. Law enforcement officers knew that the minor had been missing for days and that the father thought she was in physical danger. They also knew that her social media account had recently connected to the IP address in the apartment. Thus, law enforcement officers had

- 4 -

an objectively reasonable basis to conclude that an emergency existed, and that the place they sought to search was reasonably linked to the perceived emergency. Giambro, 126 F.4th at 54-55; see also Case, 2026 WL 96690, at *5 (noting that courts must "assess the reasonableness of [an emergency-aid] entry on its own terms"). Moreover, the entry was limited to briefly stepping inside the apartment and asking the occupants about the missing minor. Because the district court's findings are supported by the record, they are not clearly erroneous. See id.

## B. Voir Dire

Rowell next contends that the district court committed structural error by closing the courtroom to allow potential jurors to discuss possible disqualifying biases. During jury selection, the district court inquired of potential jurors whether they or a close friend or relative had been the victim of or had been accused of sexual abuse. The court also asked them whether there was anything about the facts or parties that could make it difficult for them to be fair and impartial. Three potential jurors came forward and were individually questioned by the district court. In these instances, the district court individually asked them whether they preferred to answer questions regarding their ability to sit as impartial factfinders in a private manner, to which all responded in the affirmative.

Before continuing to question the first of these potential jurors, Juror 16, the court asked defense counsel if he "object[ed] . . . to [the court] sealing the courtroom," explaining that it was doing so "[j]ust for the purposes of the inquiry of [Juror 16]." Defense counsel stated "[w]e don't object to that," after which the courtroom was sealed for about a minute and then reopened. Later, without any objection from defense counsel, the district court sealed the courtroom again for two discussions of approximately three minutes each with Jurors 20 and 42.

Rowell contends that the jurors' interest in expressing their concerns confidentially "did not outweigh [his] interest in and right to a public trial" and that "[o]ther avenues were open to the trial judge." He did not, however, raise these issues below, even after inquiry on the matter by the trial judge. This argument is therefore waived. See United States v. Acosta-Colón, 741 F.3d 179, 187 (1st Cir. 2013) (holding that defendant waived challenge to exclusion issue where, during a sidebar on the matter, other defense counsel raised objections but his attorney "said nothing"); United States v. Christi, 682 F.3d 138, 143 (1st Cir. 2012) (holding that a Sixth Amendment public trial claim can be waived).

## C. Admission of Evidence

Rowell contends that certain text messages contained hearsay and, because they were not properly attributable to him under Federal Rule of Evidence 801(d)(2), they were inadmissible. This challenge was preserved and thus subject to review for abuse of discretion. United States v. Castillo, 158 F.4th 257, 272 (1st Cir. 2025) (citing Maldonado-Peña, 4 F.4th at 29).

The messages in question were obtained from the forensic examination of a phone recovered from the minor, which she later testified belonged to Rowell. At trial, the district court allowed the prosecution to present the messages, but gave the jury a limiting instruction. The court stated that the header information in the messages -- the recipient, sender, and subject -- would be admitted for their truth. Their authorship, however, was disputed, so the jury would have to decide whether Rowell was the author of a particular message. During direct examination, the minor identified whether she or Rowell had been the author of particular entries. Further, Rowell was able to cross-examine the minor about the texts and his purported authorship. We find no evidentiary error amounting to an abuse of discretion in the admission of these messages. See United States v. Hamilton, 413 F.3d 1138, 1142 (10th Cir. 2005) (header information automatically generated by a computer not hearsay because "there was neither a 'statement' nor a 'declarant' involved." (quoting Fed. R. Evid. 801)); United

States v. Alicea Cardoza, 132 F.3d 1, 4-5 (1st Cir. 1997) (holding that the district court did not abuse its discretion in admitting beeper charts, as these were introduced to prove that a co-conspirator had received them, and whether defendant sent them was a separate matter for the jury to decide).

Rowell next challenges the admission of ClassifiedAds and Lyft emails, arguing that they were inadmissible because they were introduced only for their supposed effect on him even though, in his view, his "state of mind had no relevance to any issue in the case." We review this preserved evidentiary objection for abuse of discretion. See Castillo, 158 F.4th at 272 (citing Maldonado-Peña, 4 F.4th at 29). As for the ClassifiedAds argument, these were not admitted pursuant to the limiting instruction Rowell describes, so this claim lacks merit. As for the Lyft messages, these were "offered not to prove the truth of the matter asserted but merely to show context," and thus do not constitute hearsay. United States v. Pena, 24 F.4th 46, 61 (1st Cir. 2022); see also United States v. Cruz-Diaz, 550 F.3d 169, 176 (1st Cir. 2008) (noting a statement offered for the limited purpose of showing what effect the statement had on the listener is not hearsay). We therefore conclude that the district court did not abuse its discretion in admitting these emails.

Rowell finally contends that the government failed to observe the district court's limiting instructions during closing

argument.  He identifies three passages, but only one drew a contemporaneous objection and only that passage was arguably improper under the court's ruling.  Because Rowell timely objected, we review de novo whether the challenged remark was improper. United States v. Ramos-Baez, 86 F.4th 28, 64 (1st Cir. 2023).  Even assuming the remark was improper, as the government appears to concede, this court will order a new trial only if the statement in the context of the trial "so poisoned the well that the trial's outcome was likely affected," considering "(1) the severity of the misconduct, including whether it was isolated and/or deliberate; (2) whether curative instructions were given; and (3) the strength of the evidence against the defendant." Id. (quoting United States v. González-Pérez, 778 F.3d 3, 19 (1st Cir. 2015)).  The challenged remark was brief and not repeated, and the district court promptly gave a curative instruction that the court then repeated a second time.  Rowell did not object.  We thus see no error that may have affected the trial outcome.

### D. Alternate Jurors

Rowell argues that the district court erred under Federal Rule of Criminal Procedure 24(c)(3) in sending alternate jurors into the jury room and not inquiring into whether they actually participated and influenced deliberations.  We need not reach this argument because Rowell waived it. See Acosta-Colón, 741 F.3d at 187.

After giving its final instructions, the district court excused the jury to the jury room to begin deliberations. About eighteen minutes later, the court recalled the parties and explained that, by mistake, the two alternates had gone into the jury room with the other jurors. The court stated that it had already removed the alternates and that they were "in the hallway separately." The court then consulted with counsel and proposed to instruct the jurors that, if deliberations had begun, they must disregard anything the alternates said and begin deliberations anew. Defense counsel responded "[t]hat's fine," and also suggested language narrowing the restart instruction to the event jurors had actually discussed the case with the alternates. The court adopted that suggestion. The court then instructed the jury that if it had commenced deliberations, it must "disregard anything that the alternates said" and "restart [its] deliberations anew from the beginning." There was no objection, and just over 30 minutes later the jury returned a guilty verdict.

Rowell now faults the district court for not conducting an inquiry into whether the alternates actually participated and influenced deliberations. But he did not request any such inquiry. Even if Rowell had preserved the issue, his argument plainly fails. Rule 24(c)(3) requires the district court to "ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged," and, if

substitution occurs after deliberations begin, to instruct the jury to begin deliberations anew. Fed. R. Crim. P. 24(c)(3). But a violation of Rule 24 is not reversible per se; the question is whether the defendant can show prejudice. See United States v. Houlihan, 92 F.3d 1271, 1285 (1st Cir. 1996). Rowell identifies no basis to conclude that the brief presence of the alternates affected the verdict.

## II. Conclusion

For the foregoing reasons, we **affirm**.